[Cite as *Ormandy v. Dudzinski*, 2011-Ohio-5005.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| JOHN ORMANDY, JR., et al. | | C.A. No. 10CA009890 |
| Appellants | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RUSSELL J. DUDZINSKI, et al. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | | CASE No. 07CV151538 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2011

CARR, Judge.

{¶1} Appellants, John and Zelma Ormandy, appeal the judgment of the Lorain County Court of Common Pleas, which granted summary judgment in favor of appellees, Russell and Vicki Dudzinski. This Court affirms.

I.

{¶2} On June 28, 2007, the Ormandys filed a complaint against the Dudzinskis seeking: (1) to quiet title to certain land under the theory of adverse possession, (2) a finding that the Dudzinskis were estopped from asserting any right, title, or claim to the property at issue and an order directing the Dudzinskis to enter into an agreement pursuant to R.C. 5301.21 to establish a boundary line between the Ormandys' and Dudzinskis' adjoining properties under the doctrine of acquiescence, and (3) damages for trespass. The Dudzinskis answered, denying the allegations in the complaint and asserting as a defense that the Ormandys were estopped from asserting any claim to the disputed property.

{¶3}   The Dudzinskis filed a motion for summary judgment on all the claims on the Ormandys' complaint.  The Ormandys filed a motion for summary judgment in regard to their claim based on the doctrine of acquiescence.  The parties filed their respective briefs in opposition to their opponents' motion for summary judgment.  On August 18, 2009, the trial court issued a journal entry purporting to rule on the competing motions for summary judgment.  The trial court, however, merely entered summary judgment in favor of the Dudzinskis on the Ormandys' claim alleging adverse possession.  The Ormandys filed a motion for reconsideration, requesting that the trial court rule on all of their claims.  The Ormandys then filed a notice of appeal from the August 18, 2009 judgment.

{¶4}   This Court dismissed the Ormandys' first appeal for lack of a final, appealable order because the August 18, 2009 journal entry failed to dispose of all the claims and lacked the appropriate notice pursuant to Civ.R. 54(B).  While the first appeal was pending, the trial court ruled on the Ormandys' motion for reconsideration and issued a journal entry on October 20, 2009, purporting to dispose of all pending claims.  The Ormandys filed a second notice of appeal.  This Court dismissed the second appeal for lack of a final, appealable order because the trial court lacked jurisdiction to issue its judgment going to the merits of the case while the first appeal was pending.

{¶5}   On August 31, 2010, the trial court issued a journal entry in which it incorporated by reference its August 18, 2009 decision.  The trial court entered judgment in favor of the Dudzinskis and dismissed the Ormandys' complaint with prejudice.[1]  The Ormandys filed a

---

[1] While we recognize that it was error for the trial court to dismiss the plaintiffs' complaint after it had already rendered judgment on the complaint in favor of the defendants, we do not address the issue further because no party has raised the issue on appeal.  See App.R. 12(A)(1)(b).

timely appeal, raising four assignments of error for review. This Court consolidates some assignments of error to facilitate review.

II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT/APPELLEES DUDZINSKI ON THE ADVERSE POSSESSION CLAIM FOR THE REASON THAT THE TRIAL COURT FAILED TO CONSIDER ALL OF THE EVIDENCE PROPERLY BEFORE IT ON THAT CLAIM."

{¶6} The Ormandys argue that the trial court erred by granting summary judgment in favor of the Dudzinskis on the Ormandys' claim for adverse possession. This Court disagrees.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 12.

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

{¶9} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to

Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449.

{¶10} To acquire title to property by adverse possession, the party claiming title must prove "exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v Koch* (1998), 81 Ohio St.3d 577, syllabus. Because a successful claim of adverse possession results in the legal titleholder's forfeiture of his ownership interest in the property, the doctrine is disfavored and the burden of proof on each element is rigorous. Id. at 580. This Court has stated that each case of adverse possession must be determined on its particular facts and any such claim must be strictly construed in favor of the title owner. *Montieth v. Twin Falls United Methodist Church, Inc.* (1980), 68 Ohio App.2d 219, 224.

{¶11} The Third District Court of Appeals has clarified each necessary element of adverse possession. "Exclusive possession" means that the use of the property need only be exclusive of the title owner's or third person's entry upon the land coupled with an assertion of his right to possession or claim of title to the property. *Kaufman v. Geisken Ent., Ltd.*, 3d Dist. No. 12-02-04, 2003-Ohio-1027, at ¶39. In other words, the use need not be exclusive of all persons, but rather, exclusive only of those who assert by either word or act any right of ownership or possession of the land. Id.

{¶12} The open use element requires that there must not be any attempt to conceal the use. *Crown Credit Co., Ltd. v. Bushman*, 170 Ohio App.3d 807, 2007-Ohio-1230, at ¶46. Open use is distinguishable from notorious and adverse use in that the latter uses "require more than

merely conducting activities on the disputed property where others can observe." Id. at ¶48. "To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises. *** In other words, the use of the property must be so patent that the true owner of the property could not be deceived as to the property's use." (Internal quotations omitted.) Id. This Court has stated that '[a]dverse or hostile use is any use inconsistent with the rights of the title owner." *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298. To satisfy the adverse use element, the claimant "must have intended to claim title, so manifested by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim." (Internal quotations omitted.) *Bushman* at ¶48. The Ohio Supreme Court has held that the intent to possess the property of another is objective, rather than subjective, so that the party in possession need not have intended to deprive the owner of the property at issue; instead, the claimant need only have treated the property as the claimant's own for the statutory period to satisfy the element of adverse use. *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, at syllabus.

{¶13} The twenty-one year statute of limitations does not begin to run on a claim of adverse possession "until there is some act of possession by the adverse claimant *** so open, notorious and hostile that it constitutes, in law, notice to the real owner." *Montieth*, 68 Ohio App.2d at 225. Moreover, the statute may be tolled upon the titled owner's "unequivocal manifestation of intent to reclaim the property." Id. On the other hand, "[t]he doctrine of tacking permits adverse possession by successive owners, who are in privity, to be added together to make up the twenty-one years required for title to vest in the current possessor."

*Ballard v. Tibboles* (Nov. 8, 1991), 6th Dist. No. 91-OT-013, citing *Zipf v. Dalgarn* (1926), 114 Ohio St. 291.

**{¶14}** The disputed land in this case consists of an approximately 18-foot wide strip of land along the east-west boundary of the parties' properties. The disputed land forms a lane between the properties and is set off in places by two old wire fences.

**{¶15}** The Dudzinskis attached the following evidence in support of their motion for summary judgment: the Ormandys' answers to interrogatories, the affidavits of Mr. Dudzinski and Vincent Rawlin, and transcripts of the Ormandys' deposition testimony. Mr. Dudzinski averred in his affidavit that the Ormandys have never excluded him or his wife from the property in question and that they (the Dudzinskis) have used the "strip" of land in question since they purchased their property on August 20, 2003. Vincent Rawlin averred in his affidavit that he and his wife owned the property now owned by the Dudzinskis from 1977 to 2003. He further averred that the Ormandys never excluded the Rawlins from the lane and that the Ormandys never laid claim to the lane. Mr. Rawlin averred that no one ever used the Rawlin property to the Rawlins' exclusion and that, when the Ormandys gave others permission to use the Rawlins' land, Mr. Rawlin would tell those people to leave his property. Finally, Mr. Rawlin averred that the Ormandys asked to buy a 7-acre portion of the southeast corner of the Rawlins' property, that he refused, and that the Ormandys never used that property without the Rawlins' permission.

**{¶16}** In their answers to interrogatories, both Mr. and Mrs. Ormandy listed six ways in which they believed they had been "in actual, open, exclusive, continuous, and adverse possession" of the "strip" of land at issue. The Ormandys asserted that certain livestock used the path to reach a back pasture; the Ormandys used the area for horseback riding and lessons; the Ormandys mowed and removed brush from the lane; the Ormandys and their son Phillip used the

lane as a driveway to access Phillip's home; the Ormandys used the lane to access their back fields; and anyone who rented or used the Ormandys' back fields used the lane to access those fields. Neither Mr. nor Mrs. Ormandy responded that these uses of the property in dispute were exclusive of any use by the Rawlins. Both responded that the Dudzinskis were excluded from the strip of land only as of May 26, 2006. The only other people the Ormandys swore they had excluded from the property were unidentified "hunters, snowmobiles, persons driving snowmobiles, and ATV-riders," none of whom asserted any right of ownership or possession of the land.

{¶17} Mr. Ormandy testified during his deposition that the six ways in which he and his wife believed they had been "in actual, open, exclusive, continuous, and adverse possession" of the land at issue constituted a complete list. Again, he failed to explain how he and his wife might have excluded the Rawlins from the property. Mr. Ormandy testified that he never excluded the Dudzinskis from the strip of land in dispute and that he had never in fact met them. Mrs. Ormandy testified during her deposition that the Rawlins once used the lane to retrieve their horses which had strayed into the Ormandys' fields. She testified that, while she was not aware of any other time in which the Rawlins used the land in dispute, she never told the Rawlins that the lane belonged exclusively to the Ormandys.

{¶18} Based on a review of the Dudzinskis' evidence, this Court concludes that the Dudzinskis met their initial burden to demonstrate that the Ormandys had not used the lane to the exclusion of any person who could assert a right of ownership or possession to the land in question. The Ormandys, on the other hand, failed to meet their reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. See *Tompkins*, 75 Ohio St.3d at 449.

{¶19}   The Ormandys attached the following in support of their response in opposition to the Dudzinskis' motion for summary judgment: Mr. Ormandy's affidavit; an identical affidavit of Vincent Rawlin as that attached to the Dudzinskis' motion; a copy of the May 26, 2006 letter sent from their attorney to the Dudzinskis, directing them to cease further activity on property the Ormandys were claiming by way of adverse possession; and transcripts of Mr. and Mrs. Dudzinski's deposition testimony.

{¶20}   While Mr. Ormandy averred in his affidavit that the Rawlins "never maintained or used the property on my side of the fence[,]" he failed to explain which of the two fences he was referencing and he did not mention a "lane" or "strip" of land set off by two fences.  Mr. Rawlin, however, averred in his affidavit that there were two fences which created a lane between the properties and that he and his wife used the lane during the course of their 35-year residence to walk their dogs.  Mr. Rawlin admitted that the Ormandys' son used the lane to access the Ormandys' back fields, but he averred that the Ormandys did not exclude them from the lane and that the Ormandys never laid claim to the property.

{¶21}   Both Mr. and Mrs. Dudzinski testified regarding the existence of a lane along the boundary of two properties.  Mr. Dudzinski testified that two parallel fence lines create a lane between the properties approximately thirty to fifty feet apart.

{¶22}   The evidence presented by both parties supports the conclusion that the Ormandys did not use the land in question, i.e., the lane between the properties, to the exclusion of anyone who could assert a claim of title or ownership of the land for the statutory period of twenty-one years.  The Dudzinskis' grantors, the Rawlins, averred that they routinely used the land in question during their 35-year residency.  The Ormandys presented no evidence that they excluded anyone from the property except for unidentified recreational users who had no claim

of right to the property. Under the circumstances, the Ormandys failed to meet their reciprocal burden under *Tompkins* to respond by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated in regard to their claim alleging adverse possession. The Ormandys' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT/APPELLEES DUDZINSKI ON THE DOCTRINE OF ACQUIESCENCE CLAIM FOR THE REASON THAT THE TRIAL COURT FAILED TO CONSIDER ALL OF THE EVIDENCE PROPERLY BEFORE IT ON THAT CLAIM.

## ASSIGNMENT OF ERROR IV

"THE TRIAL COURT ERRED WHEN IT DENIED THE SUMMARY JUDGMENT MOTION OF PLAINTIFF/APPELLANTS JOHN AND ZELMA ORMANDY FOR THE REASON THAT IT FAILED TO CONSIDER THE EVIDENCE RAISED BY THE ORMANDYS CONCERNING THE DOCTRINE OF ACQUIESCENCE."

{¶23} The Ormandys argue that the trial court erred by granting summary judgment in favor of the Dudzinskis on the Ormandys' claim that the Dudzinskis were estopped from asserting any right, title, or claim as to the disputed property pursuant to the doctrine of acquiescence. This Court disagrees.

{¶24} "The doctrine of acquiescence is applied in instances when adjoining land owners occupy their respective properties up to a certain line and mutually recognize and treat that line as if it is the boundary that separates their properties. Acquiescence rests on the practical reality that oftentimes, the true boundary line location is uncertain and neighbors may themselves establish boundaries. To apply this doctrine: (1) adjoining landowners must treat a specific line as the boundary; and (2) the line must be so treated for a period of years, usually the period

required for adverse possession." (Internal citations omitted.) *Merriner v. Goddard*, 7th Dist. No. 08-MO-2, 2009-Ohio-3253, at ¶57.

{¶25} The Ohio Supreme Court recognized the doctrine of acquiescence long ago: "[W]e hold the principle to be well settled that an agreement upon a division line between adjoining land-owners, different from the true line, the true line being a certain, and not a disputed line, and acquiescence by all the parties in such agreed line, for a length of time that would bar a right of entry under the statute of limitations in relation to real estate, would operate to prevent a party purchasing from one of such owners, *with notice of the agreed line*, from setting up a claim to any line other than that agreed upon, although the occupancy had not been such as, aside from the marking of the agreed line, would amount to a continuous possession of the entire premises up to the agreed line, for the whole time." (Emphasis added.) *Bobo v. Richmond* (1874), 25 Ohio St. 115, 122.

{¶26} Although the concept of "tacking" has not been applied by name to situations implicating the doctrine of acquiescence, it is clear that the Supreme Court intended to allow landowners to rely on the acquiescence of an adjoining landowner for the requisite period of years to preclude a subsequent grantee from asserting a claim of right, title, ownership, or possession regarding the subject property as long as the subsequent grantee had notice of the grantor's acquiescence. It appears, therefore, that while adverse possession serves to vest title in the adverse possessor by operation of law, the doctrine of acquiescence, if not invoked against the party who acquiesced in the location of the property line, fails to deprive a subsequent grantee of his title to property in the absence of notice of his grantor's recognition of the property line as mutually agreed by the adjoining landowners. In this case, therefore, a crucial issue becomes whether, if the Ormandys have established that the Rawlins acquiesced in the location

of the property line, the Dudzinskis purchased the property with notice of the Rawlins' acquiescence. If not, then the Ormandys derive no benefit from the Rawlins' acquiescence in the location of the property line.

{¶27} The Ormandys and Rawlins were adjoining landowners for almost twenty-six years. Mr. Ormandy averred in his affidavit that "the" wire fence running through the tree line between the adjoining properties "was always mutually recognized and treated as the north-to-south boundary." Mr. Rawlin averred in his affidavit that two wire fences ran along portions of the property "on the common border." He averred that he "was never certain" where the actual north-south boundary line was located but that he assumed that "the old wire field fence" was the property line and that he placed ten locust fences posts "there" with the intention of replacing "the old wire fence." Mr. Rawlin did not clarify which of the two fences constituted "the old wire field fence." Moreover, his assumption of the location of the property line was limited to merely "the northern end of the property along our approximately 15 acre tilled field." According to the map which was marked as an exhibit to Mr. Ormandy's deposition, the north-south boundary between the adjoining properties is approximately 2700 feet long. Mr. Rawlin did not clarify in his affidavit which portion of that boundary constituted the "northern end" to which he referred. Nevertheless, Mr. Rawlin averred in his affidavit that neither he nor Mrs. Rawlin ever agreed with anyone that either of the two fences constituted the boundary line between the adjoining properties.

{¶28} In his deposition, Mr. Ormandy testified that he never discussed the boundary line with the Rawlins but that Mr. Rawlin only mowed up to the boundary as the Ormandys understood it and that Mr. Rawlin asked permission to replace the fence at the location that the Ormandys understood the boundary to be.

**{¶29}** The Dudzinskis both testified during their depositions that the Rawlins gave them a tour of the property before they purchased it. They testified, however, that the Rawlins did not walk the perimeter of the property with them or otherwise point out the boundary line between the adjoining properties. Mrs. Dudzinski testified that the Rawlins merely informed them that the culvert along the road on the northern border of the property belonged to them.

**{¶30}** Based on a review of the evidence, a genuine issue of material fact exists regarding whether the Rawlins acquiesced in the location of the boundary. Had they done so during the entire time they were neighbors with the Ormandys, their acquiescence would have continued for a period of time in excess of twenty-one years. The Ormandys, however, did not seek to estop the Rawlins from asserting any right or claim to the property in dispute. The Dudzinskis commissioned a survey of their property a mere two years after purchasing the land. If they had no notice of any acquiescence by the Rawlins in the location of the boundary line, the Ormandys could not take advantage of the period of the Rawlins' acquiescence to estop the Dudzinskis from asserting any right or claim to the disputed land. The Ormandys presented no evidence to demonstrate that the Dudzinskis and the Rawlins discussed the Rawlins' understanding of the location of the boundary line. Accordingly, the Ormandys did not meet their initial *Dresher* burden to present evidence on the issue of the Dudzinskis' notice of any acquiescence by the Rawlins as to the location of the boundary line between the adjoining properties. Therefore, no genuine issue of material fact existed and the Dudzinskis were entitled to judgment as a matter of law on the claim premised on the doctrine of acquiescence. Accordingly, the trial court did not err by granting summary judgment in favor of the Dudzinskis.

**{¶31}** The Ormandys' second and fourth assignments of error are overruled.

**ASSIGNMENT OF ERROR III**

"THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT/APPELLEES DUDZINSKI ON THEIR AFFIRMATIVE DEFENSE OF ESTOPPEL."

{¶32} The Ormandys argue that the trial court erred by granting summary judgment in favor of the Dudzinskis based on their affirmative defense of estoppel. Because the trial court granted summary judgment in favor of the Dudzinskis based on the lack of evidence tending to show the existence of a genuine issue of material fact as to the essential elements of the Ormandys' claims, the trial court did not reach the issue of the Dudzinskis' affirmative defense. Because this Court agrees with the trial court's award of summary judgment in favor of the Dudzinskis on those grounds, the Ormandys' third assignment of error is moot and we decline to address it.

III.

{¶33} The Ormandys' first, second, and fourth assignments of error are overruled. As this Court's resolution of those assignments of error is dispositive of the appeal, we decline to address the third assignment of error as it has been rendered moot. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR

APPEARANCES:

MARYANN C. CHANDLER, Attorney at Law, for Appellants.

JONATHAN E. ROSENBAUM, Attorney at Law, for Appellees.