[Cite as *Matus v. Merrill*, 2014-Ohio-3181.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

PAUL MATUS, M.D., et al.

    Appellants

    v.

DANIEL MERRILL, et al.

    Appellees

C.A. No.     13CA010468

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    12CV176563

DECISION AND JOURNAL ENTRY

Dated: July 21, 2014

---

WHITMORE, Judge.

{¶1}  Plaintiffs-Appellants, Paul and Linda Matus, appeal from the judgment of the Lorain County Court of Common Pleas, granting summary judgment in favor of Defendants-Appellees, Daniel and Marlene Merrill. This Court affirms in part and reverses in part.

I

{¶2}  In February 1979, the Merrills purchased a property on a cul-de-sac in Oberlin, Ohio. Several months later, the Matuses purchased the neighboring property. The parties have owned and resided in their respective properties ever since. According to Paul Matus, the parties understood the property line between the two homes to be a diagonal line that radiated from a flagpole in the center of the cul-de-sac. The Matuses assert that, with that boundary line in mind, they have maintained the property throughout the years.

{¶3}  Paul Matus testified that the maintenance he has performed on the property has included installing underground drainage tile, elevating the property with fill dirt, removing a

tree, and regular lawn care. According to the Matuses, the Merrills also respected the agreed property line when conducting their landscaping and by requesting permission for roofers to enter the strip of land between the two properties to perform roof repairs. Daniel Merrill testified that he only had a vague understanding of where the property line was and denied that there was any agreement to a specific boundary.

{¶4} In 2012, the Merrills had their property surveyed and "erected a split rail fence about a foot and one-half to their side of the lot line as determined by the survey." This newly installed fence was within a few feet of an existing fence on the Matuses property, which enclosed a garden. As a result of this newly installed fence, the Matuses could no longer access their back yard with their lawn mower as they had regularly done over the years.

{¶5} The Matuses filed suit against the Merrills claiming adverse possession, acquiescence of title, trespass, prescriptive easement, and entitlement to injunctive relief. After discovery, the Matuses filed a motion for summary judgment on their claim for acquiescence of title. The Merrills filed a motion for summary judgment on all of the claims. After the parties filed their respective responses in opposition, the court denied the Matuses' motion for summary judgment and granted the Merrills'. The Matuses now appeal and raise four assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED WHEN IT GRANTED THE MERRILLS SUMMARY JUDGMENT ON THE CLAIM OF ACQUIES[C]ENCE WHEN THE MERRILLS SUPPLIED NO EVIDENCE TO THE CONTRARY.

{¶6} In their first assignment of error, the Matuses argue that the court erred in granting the Merrills' motion for summary judgment on the claim of acquiescence. We agree.

**{¶7}** This Court reviews a trial court's decision to grant a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Burr v. Nationwide Mut. Ins. Co.*, 9th Dist. Lorain No. 12CA010231, 2013-Ohio-4406, ¶ 8.

**{¶8}** Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *See* Civ.R. 56(E); *Dresher* at 293.

> The doctrine of acquiescence is applied in instances when adjoining land owners occupy their respective properties up to a certain line and mutually recognize and treat that line as if it is the boundary that separates their properties. Acquiescence rests on the practical reality that oftentimes, the true boundary line location is uncertain and neighbors may themselves establish boundaries. To apply this doctrine: (1) adjoining landowners must treat a specific line as the boundary; and (2) the line must be so treated for a period of years, usually the period required for adverse possession.

*Ormandy v. Dudzinski*, 9th Dist. Lorain No. 10CA009890, 2011-Ohio-5005, ¶ 24, quoting *Merriner v. Goddard*, 7th Dist. Monroe No. 08-MO-2, 2009-Ohio-3253, ¶ 57. For the doctrine of acquiescence to apply, the parties must have agreed to a specific boundary line. *Id.*

{¶9} In his affidavit, Paul Matus averred that when they purchased the property in 1979, they were "informed by the former owner and the realtor that their property lines radiated from the flagpole in the center of the cul-de-sac in front of their home." Matus further attested that both parties recognized the property line between their properties as a "line originating at the flagpole in the center of [the] cul-de-sac and extending to a sited point approximately six feet south of the intersection of [the Merrills'] newly installed fence and the existing fence to the east * * *."

{¶10} The Matuses argue that they have maintained the property in accordance with the agreed boundary since 1979. This maintenance has included: (1) adding fill dirt to elevate the land between the two properties, (2) installing underground drainage tile to alleviate flooding problems, (3) removing a tree, and (4) regular lawn care. The Matuses further argue that the Merrills acquiesced to the property line and that their acquiescence is evidenced by the Merrills landscaping in accordance with the agreed boundary and, in 2006, requesting permission from the Matuses for their roofer to enter the disputed area to repair their roof.

{¶11} Daniel Merrill testified that he only had a vague understanding of where the property line was located and that the survey was "more or less consistent" with his understanding. Merrill disputed the assertion by the Matuses that they had exclusively maintained the disputed portion of the yard. Merrill testified that he did not perform his own lawn maintenance but instead hired someone to perform that task. Merrill stated that he instructed the people he employed to maintain his lawn "where the property line might be and asked them to mow out to there." Merrill further testified that when he planted trees in between the houses he did not want to get close to the property line so he chose to plant them four or five feet away from where he perceived the property line to be located. According to Merrill, the

trees are "a little further from the survey line, but not much." He estimated the trees were a foot or two further in from the property line than what he had originally thought.

{¶12} Merrill stated that he had no recollection of asking permission for the roofers to enter the Matuses' property, but would not dispute a statement that he did. As to the underground drainage tiles, Merrill testified that he knew Matus had installed them and that he had not objected to their installation. He further testified that as a result of the new fence, Matus could no longer access his back yard with his lawn mower and "leaf picker-upper" as he had regularly done prior to the installation of the new fence.

{¶13} Viewing the evidence in a light most favorable to the Matuses, there is a genuine issue of material fact as to whether the parties agreed on a boundary line different than that of the surveyed property line. The court concluded that the Matuses "have failed to prove by clear and convincing evidence that the [Merrills] mutually agreed to any specific boundary line."[1] "If anything, [the court concluded,] the evidence * * * indicates that neither party actually knew where the true property line was located." The court went on to explain that Matus testified that he believed the boundary line radiated from the flagpole, but Merrill testified that he only had a vague idea of its location.

{¶14} The evidence does support the finding that neither party knew the actual location of the true property line. However, this does not preclude a finding that the parties agreed to a different line as the boundary. Matus testified that in recognition of the agreed property line he: (1) installed underground drainage tile, (2) removed a tree, (3) added fill dirt to elevate the

---

[1] We must note that this is the incorrect standard for summary judgment. However, in the following paragraph the court properly articulated the summary judgment standard so it is unclear which the court followed. To the extent that the court weighed the evidence in ruling on the motion for summary judgment, it erred. *See Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, ¶ 10 (9th Dist.).

property, and (4) performed regular lawn maintenance. Additionally, Matus asserts that Merrill recognized the same property line by: (1) installing several trees four or five feet from the agreed boundary, (2) placing mulch along the agreed dividing line, and (3) requesting permission to enter the strip of land when roofers were performing repairs. While Merrill disputes these actions are indicative of an agreement to establish a boundary line, and further disputes that there was ever any agreement to establish a boundary line, for purposes of summary judgment, the evidence must be viewed in favor of the Matuses. When viewing the evidence in a light most favorable to the Matuses, there remains a genuine issue of material fact as to whether the parties agreed on a boundary line different than that of the actual property line. Therefore, the court erred in granting the Merrills' motion for summary judgment on the claim of acquiescence. The Matuses' first assignment of error is sustained.

Assignment of Error Number Two

> THE TRIAL COURT ERRED WHEN IT DENIED THE MATUS'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF ACQUIE[SCE]NCE WHEN THE MERRILLS COULD SUPPLY NO EVIDENCE TO THE CONTRARY.

{¶15} In their second assignment of error, the Matuses argue that the court erred in denying their motion for summary judgment on their claim of acquiescence. We disagree.

{¶16} We incorporate the standard of review set out above and review this assignment of error de novo. *See Grafton*, 77 Ohio St.3d at 105.

{¶17} As discussed in the first assignment of error, there remains a genuine issue of material fact as to whether the parties agreed to a specific boundary line. Matus cites various actions that he asserts establish that the parties had agreed to a specific property line. Merrill denies that the actions cited by Matus establish that the parties agreed to any specific boundary. Because there is a dispute of fact, the issue is one to be decided by the trier of fact.

**{¶18}** Because there remains a genuine issue of material fact, the court did not err in denying the Matuses' motion for summary judgment on their claim of acquiescence. Their second assignment of error is overruled.

Assignment of Error Number Three

THE TRIAL COURT ERRED WHEN IT GRANTED THE MERRILLS' MOTION FOR SUMMARY JUDGME[NT] ON THE ADVERSE POSSESSION CLAIM.

**{¶19}** In their third assignment of error, the Matuses argue that the court erred in granting summary judgment against them on the Matuses' claim of adverse possession.

**{¶20}** Because their third assignment of error also relates to the court's decision to grant a motion for summary judgment, we incorporate the standard of review set out above. *See Grafton*, 77 Ohio St.3d at 105.

**{¶21}** Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple*, 50 Ohio St.2d at 327.

**{¶22}** "[T]o acquire title by adverse possession, a party must prove by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 580-581 (1998). The trial court found that "[c]onsidering all of the evidence before [it] and construing [the evidence] in favor of [the Matuses,] * * * [the Matuses] have not proven by clear and convincing evidence a claim for adverse possession and [the Merrills] are entitled to summary judgment on this [c]ount."

{¶23} "In ruling on a motion for summary judgment the trial court is not permitted to weigh the evidence or choose among reasonable inferences." *Stewart*, 176 Ohio App.3d 658, 2008-Ohio-3215, at ¶ 10, quoting *Harry London Candies, Inc. v. Bernie J. Kosar Greeting Card Co.*, 9th Dist. Summit No. 20655, 2002 WL 185305, *3 (Feb. 6, 2002). In order to conclude that the Matuses had not presented clear and convincing evidence, the court had to weigh the evidence. Because the court is not permitted to weigh the evidence when ruling on a motion for summary judgment, the Matuses' third assignment of error is sustained and the case is remanded for the trial court to apply the correct legal standard.

Assignment of Error Number Four

> THE TRIAL COURT ERRED WHEN IT FAILED TO ADDRESS THE MATUSES' ARGUMENT CONCERNING A PRESC[R]IPTIVE EASEMENT.

{¶24} In their fourth assignment of error, the Matuses argue that the court erred in granting summary judgment without specifically addressing their claim for a prescriptive easement.

{¶25} "A party claiming a prescriptive easement has the burden of proving a use of the property that is: (1) open; (2) notorious; (3) adverse to the neighbor's property rights; (4) continuous; and (5) at least 21 years in duration." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234, ¶ 12. The elements for a prescriptive easement differ from those required for adverse possession only in that a prescriptive easement does not require exclusive use. *Vaughn v. Johnston*, 12th Dist. Brown No. CA2004-06-009, 2005-Ohio-942, ¶ 11.

{¶26} The court found that the Matuses' claim for a prescriptive easement was "dependent upon" the Matuses proving a claim under the doctrine of acquiescence or adverse

possession. In light of our resolution of their first and third assignments of error, we conclude this assignment of error is not yet ripe for review and we decline to address it.

### III

**{¶27}** The Matuses' first and third assignments of error are sustained. Their second assignment of error is overruled and their fourth assignment of error is not ripe for review. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

JONATHAN E. ROSENBAUM, Attorney at Law, for Appellants.

FRANK CARLSON, Attorney at Law, for Appellees.