**CROWN CREDIT COMPANY, LTD., Appellant,**

v.

**BUSHMAN et al., Appellees.**

[Cite as *Crown Credit Co., Ltd. v. Bushman,* 170 Ohio App.3d 807, 2007-Ohio-1230.]

Court of Appeals of Ohio,
Third District, Auglaize County.

No. 2–06–28.

Decided March 19, 2007.

808

810

James A. Dyer and Scott S. Davies, for appellant.

Ronald H. Miller, for appellees.

ROGERS, Presiding Judge.

{¶ 1} Plaintiff–appellant, Crown Credit Company, LTD. ("Crown"), appeals the judgment of the Auglaize County Court of Common Pleas denying its motion for summary judgment and granting the motion for summary judgment of defendant-appellees, Dennis W. Bushman and Gertrude M. Bushman. On appeal, Crown asserts that the trial court erred by finding that its survey of the disputed land bordering Crown's and the Bushmans' properties (hereinafter referred to as the "border area") did not interrupt the requisite statutory period for adverse possession; that the trial court erred by finding that the Bushmans actually, openly and notoriously, and exclusively possessed the border area; and, that the trial court erred by finding that the Bushmans' predecessors in interest adversely possessed the border area. Based on the following, we reverse the judgment of the trial court.

{¶ 2} The following facts are undisputed.

{¶ 3} The Bushmans purchased lot 20 and part of lot 21, located on Lock Two Road in New Bremen, Auglaize County, Ohio, from the Hibners in December 1978. At that time, the western portion of lot 21 was owned by the Farks.[1] Lot 22, located to the east of lot 20,[2] was owned by the Scheers.[3] Bremco Farms, Inc., owned a farm field located to the south of the Fark, Bushman, and Scheer properties. The border area, a grassy strip of land, ran along the northern edge of the farm field and the southern edge of the Bushmans' property.

{¶ 4} Additionally, an old fence line ran through the border area and extended from a wood corner post at the southeast corner of the Scheer property to a wood corner post at the southwest corner of the Fark property. The fence was still intact across the Scheer property and onto part of lot 20 when the Bushmans purchased their property. However, the western portion of the fence from the portion of lot 20 westward to the Farks' had deteriorated, and only steel posts and scrub brush remained along the fence line in the border area. Two evergreen trees, a row of poplar trees, and a tree stump also ran across the old fence line in the border area. The Bushmans' portion of lot 21 also contained a small garden, a storage shed, and a wooden fence that extended from behind the shed. When the Bushmans purchased the property in 1978, Mr. Hibner informed Dennis Bushman that the old fence line marked the southern boundary of the property.

{¶ 5} Shortly after purchasing the property, the Bushmans removed the portion of the fence on lot 20 because it was rusted, as well as the steel posts and scrub brush along the fence line on lot 21, and the tree stump and some trees, including the row of poplars, because they had died.

{¶ 6} Additionally, the Bushmans expanded the garden and had drainage tile installed near it. Small portions of both the garden and the drainage tile extend into the border area. The Bushmans also constructed a grape arbor in the border area, consisting of concrete bases on the ends and welded metal in the middle, approximately five to ten feet north of the old fence line. Since purchasing their property, the Bushmans have mowed the border area up to the edge of the farm field.

{¶ 7} In early 1989, Bremco Farms, Inc., sold the farm field adjacent to the Bushmans' southern property line to D.J. Associates, an Ohio partnership.

---

1. The Verhoffs currently own the western portion of lot 21.

2. The sequencing of the lots is not numerical regarding lots 20, 21, and 22. Lot 20 is located between lots 21 and 22.

3. Crown currently owns lot 22.

{¶ 8} In early May 1989, Crown Equipment Corporation, ("Crown Equipment"), an affiliate of Crown, hired a surveyor, Mike Holt, to survey the farm field in preparation for Crown Equipment's purchase of the farm field from D.J. Associates. Holt spent two days walking the property and conducting the survey. Holt's practice during surveying is to place small wire post flags in the ground at the corners of the lots located within the area being surveyed. The Bushmans did not recall seeing either Holt conducting the survey or any survey flags, stakes, or markers around the border area at that time.

{¶ 9} After surveying the property, Holt created a survey of the property, including all buildings, structures, monuments, iron pins, encroachments, or easements located on it. The survey accurately depicted the legal boundaries of both Crown's and the Bushmans' properties.

{¶ 10} On May 11, 1989, Holt recorded the survey with the Auglaize County Engineer's Office. The survey indicated that the border area behind the Bushmans' property belonged to Crown Equipment. The survey also indicated that the Bushmans' grape arbor, part of the garden, and the fence behind the shed encroached upon the border area.

{¶ 11} On May 26, 1989, Crown Equipment purchased the farm field from D.J. Associates. The deed transferring ownership from D.J. Associates to Crown Equipment incorporated the recorded 1989 survey, and the deed itself was recorded on June 1, 1989.

{¶ 12} Sometime after Holt conducted the 1989 survey, the Bushmans removed another tree that had died in the grassy strip and replaced it with a different tree. The Bushmans also placed a movable gas tank on stilts near the shed.

{¶ 13} In 1997, Crown acquired the farm field from Crown Equipment. Crown continued to use the field for farming, renting it to a tenant farmer.

{¶ 14} In the fall of 2004, the Bushmans contacted a surveyor, Steve Kramer, to survey their property because they wanted to expand the shed and install a driveway on the eastern portion of their property, and they were uncertain where the eastern property line ended. The results of Kramer's measurements revealed that the border area, including the area where the old fence line had run, belonged to Crown. Kramer's measurements also indicated that the Bushmans' grape arbor, a portion of the garden, and a portion of the fence behind the shed encroached upon Crown's property.

{¶ 15} In December 2004, the Bushmans contacted Mark Manuel, Crown's vice-president of development and information services, in order to resolve the issue with the border area. Specifically, the Bushmans wanted to obtain title, through purchase or otherwise, to the border area. Subsequently, the Bushmans

delivered a packet to Manuel containing Kramer's sketch of the property and a copy of the 1989 survey.

{¶ 16} Manuel was unaware of either the border area issue or the 1989 survey until the Bushmans contacted him in December 2004. Manuel spoke with Dennis Bushman in January 2005 and informed him that the border area was strategic to Crown's Pioneer Subdivision and that Crown was not willing to sell it. However, Manuel told Dennis Bushman that Crown did not have plans for the border area for a couple of years and gave him permission to continue using it until that time.

{¶ 17} On January 26, 2005, Manuel sent a follow-up letter to the Bushmans stating that Crown could not sell the border area and instructing them to call him with any questions about removal of anything from Crown's land over the next year or two. Subsequently, Manuel hired a surveyor to survey Crown's land, including the border area, and then traveled to the property to see the stakes placed by the surveyor.

{¶ 18} The Bushmans conceded that Crown owns the border area; that they never asserted ownership of it throughout their correspondence with Manuel; that they never paid taxes on the border area; that the deed to their property did not include the border area; that the boundary between Crown's and what they believed was their property was difficult to detect after they removed the remnants of the fence; that they never attempted to enclose the border area; and, that their primary activity in the border area was mowing the grass.

{¶ 19} In July 2005, the Bushmans filed a complaint to quiet title of the border area against Crown Equipment based on adverse possession.

{¶ 20} In August 2005, the Bushmans dismissed their complaint after learning that Crown Equipment was no longer the record titleholder of the border area.

{¶ 21} In September 2005, Crown filed a complaint for declaratory judgment, requesting that the trial court declare that Crown is the legal owner of the border area; that Crown owns the border area in fee simple; that the Bushmans have no interest or claim in interest of the border area; and, that the Bushmans have no right to enter or use the border area without Crown's express permission.

{¶ 22} In October 2005, the Bushmans answered Crown's complaint and counter-claimed to quiet title based upon adverse possession.

{¶ 23} In November 2005, Crown answered the Bushmans' counter-claim.

{¶ 24} On July 3, 2006, Crown moved for summary judgment.

{¶ 25} On July 19, 2006, the Bushmans answered Crown's summary judgment motion and also moved for summary judgment.

{¶ 26} On July 21, 2006, the trial court denied Crown's motion for summary judgment, but granted the Bushmans' motion for summary judgment. In doing so, the trial court found as follows:

The record reflects that the Defendants, Dennis W. & Gertrude M. Bushman, and their predecessors in interest, have actually occupied the parcel in question, exclusively, which possession has been open and notorious, and in accordance with *Kaufman v. Geisken Enterprises,* [3d Dist. No. 12–02–04], 2003-Ohio-1027 [2003 WL 832678], and considering the trees planted, the fencing, the lines of the adjoining properties' fencing or posts. Mere survey of the property does not toll the 21–year period. Instead, it shows that [Crown] knew or should have known of the adverse use of the property by [the Bushmans]. Entry by the surveyor and setting the pins does not amount to interruption of the exclusive use and possession of [the Bushmans] within the 21–year period in question, and no other evidence exists to negate adverse possession shown by the evidence.

Additionally, the trial court declared the border area the property of the Bushmans, awarded legal title to the Bushmans, quieted title to the border area against any right, title, or claim by Crown, and ordered Crown to pay costs.

{¶ 27} It is from this judgment that Crown appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial court erred by finding as a matter of law that the crown survey did not interrupt the 21–year period required to gain title by adverse possession.

### Assignment of Error No. II

The trial court erred as a matter of law by finding that the defendants have actually, open and notoriously, and exclusively possessed the border area.

### Assignment of Error No. III

The trial court erred as a matter of law in finding that the defendants' predecessors in interest had adversely possessed the border area because the conduct of the defendants' predecessors was never an issue before the trial court.

{¶ 28} Because all three assignments of error address the trial court's decision to grant the Bushmans' motion for summary judgment, we will use the following standard of review and the doctrine of adverse possession throughout this entire opinion.

## Standard of Review

{¶ 29} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, at ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150. Summary judgment is appropriate when, looking at the evidence as a whole (1) there is no genuine issue as to any material fact, (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 30} The party moving for summary judgment has the initial burden of producing some evidence that affirmatively demonstrates the lack of a genuine issue of material fact. *State ex rel. Burnes v. Athens City Clerk of Courts* (1998), 83 Ohio St.3d 523, 524, 700 N.E.2d 1260; see also *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.

## The Doctrine of Adverse Possession

{¶ 31} A successful adverse-possession claim results in the forfeiture of ownership of property by the legal titleholder to the adverse possessor without compensation. *Grace v. Koch* (1998), 81 Ohio St.3d 577, 580, 692 N.E.2d 1009. Consequently, the doctrine of adverse possession is disfavored and its elements stringent. Id. Accordingly, a claimant must demonstrate, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use of the disputed property for a period of 21 years[4] to acquire title by adverse possession. Id. Failure to prove any one of the elements by clear and convincing evidence results in failure to acquire title by adverse possession. Id., citing *Pennsylvania RR. Co. v. Donovan* (1924), 111 Ohio St. 341, 349–350, 145 N.E. 479. Clear and convincing evidence is that "which will produce in the mind of the

---

4. R.C. 2305.04 sets forth the 21–year period, providing, "An action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued."

trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus; *State v. Boshko* (2000), 139 Ohio App.3d 827, 835, 745 N.E.2d 1111.

{¶ 32} Moreover, each case of adverse possession must be evaluated on its particular facts, and such a claim is to be " 'construed strictly in favor of the owner of * * * title.' " (Omission sic.) *Montieth v. Twin Falls United Methodist Church* (1980), 68 Ohio App.2d 219, 224, 22 O.O.3d 346, 428 N.E.2d 870, quoting 2 Corpus Juris Secundum 648–649, Adverse Possession, Section 5.

### Assignment of Error No. I

{¶ 33} In its first assignment of error, Crown contends that the trial court erred by finding that its survey did not interrupt the 21–year period required to gain title by adverse possession. Specifically, Crown asserts that the 1989 survey was sufficient to break the continuity of an adverse-possession claim, relying upon *Montieth*. Alternatively, Crown argues that even if the 1989 survey alone did not disrupt the 21–year statutory period, the subsequent recording of it and the incorporation of it into the deed transferring ownership from D.J. Associates to Crown Enterprise, gave sufficient notice to the Bushmans to disrupt the 21–year statutory period.

{¶ 34} Whether a survey of property disrupts the 21–year period required for adverse possession is an issue of first impression for this court. Indeed, the Ninth District's *Montieth* decision is the only Ohio case we have found that dealt directly with this issue. In *Montieth,* the Montieths claimed ownership by adverse possession to a strip of land abutting their eastern property line. The Montieths acquired their property in 1946. At the time of purchase, the seller represented to the Montieths that the strip of land was part of the property. However, the strip of land was actually part of the Twin Falls Methodist Church property, which the church acquired in 1968.

{¶ 35} In 1969, the church had its property surveyed for the purpose of grading the property. In the first half of 1970, a trustee of the church informed the Montieths that the strip of land did not belong to them. Subsequently, the church graded part of the strip of land.

{¶ 36} Thereafter, the Montieths initiated an action to quiet title to the disputed property, claiming ownership by adverse possession. The trial court found that the Montieths had satisfied the requirements for adverse possession and that the church's 1969 survey had not sufficiently interrupted the running of the statute of limitations for adverse possession.

{¶ 37} On appeal, the Ninth District reversed. In doing so, the Ninth District first found that the statutory period did not begin running until 1950, when the Montieths built a pigpen on part of the disputed land and, subsequently, maintained a garden in the same spot. With regard to the church's survey, the Ninth District found:

> [T]he statute was tolled at the time when the survey was conducted for the purpose of grading the property. We add that the [Montieths] were informed in 1970 by an agent of the [church] that the property in question in fact belonged to the [church]. These acts, we believe, are a sufficient demonstration of an intent by the owners of title to recover possession. See *Rosencrantz v. Shields, Inc.* (1975), 28 Md.App. 379, 346 A.2d 237. This entry upon the disputed land by the [church], evokes a positive interruption of the statutory period and an unequivocal manifestation of intent to reclaim the property. See Annotation 76 A.L.R.3d 1202, at 1207–1209.

68 Ohio App.2d at 225, 22 O.O.3d 346, 428 N.E.2d 870.

{¶ 38} Crown urges us to interpret the holding in *Montieth* as support for the contention that a record titleholder's conducting of a survey, without more, is sufficient to break the continuity of an adverse-possession claim. We disagree with Crown's interpretation. In finding that the date of the survey was the date the church disrupted Montieths' continuity for adverse possession, the Ninth District stressed the fact that the survey was conducted for the purposes of grading, rather than to simply ascertain the locality of the property. Moreover, the Ninth District emphasized "these acts" as evidence of the church's intent to recover possession of the disputed strip, referring to both the survey and to the church's subsequent declaration to Montieth that it owned the disputed strip.

{¶ 39} Furthermore, the Ninth District referenced *Rosencrantz* and the American Law Reports to support its conclusion. In *Rosencrantz*, the Maryland Court of Special Appeals expressed doubts that entry upon disputed land by a true owner's agents, merely to conduct a survey, would sufficiently disrupt the continuity of adverse possession as a matter of law.[5] 28 Md.App. at 393, 346 A.2d 237. Instead, the *Rosencrantz* court stated that whether a survey, without more, is sufficient to disrupt continuity of adverse possession must be evaluated on a case-by-case basis to discern whether the entry to conduct a survey was " 'accompanied by a purpose to take possession.' " Id. at 390, 346 A.2d 237, quoting 2 Corpus Juris Secundum (1972) Adverse Possession, Section 173.

---

5. The issue of whether the conducting of a survey, alone, disrupts the continuity of adverse possession was not dispositive to the *Rosencrantz* court's holding. However, the *Rosencrantz* court discussed the issue at length in dicta, summarizing pertinent case law and several commentaries on adverse possession and real property.

{¶ 40} Likewise, the American Law Reports provides that, generally, an "owner's surveying of land, without more, is not enough to interrupt the continuity of possession so as to toll the running of the statute of limitations for the purposes of adverse possession." 76 A.L.R.3d 1202, Section 2. Instead, the owner's surveying of the land must be "made with the intent of recovering possession" to sufficiently "interrupt the continuity of adverse possession so as to toll the statute of limitations." 76 A.L.R.3d 1202, Section 3, referencing *Montieth*, 68 Ohio App.2d 219, 22 O.O.3d 346, 428 N.E.2d 870.

{¶ 41} Thus, we do not accept Crown's argument that *Montieth* stands for the proposition that a record titleholder's entry, by an agent or otherwise, upon disputed land to conduct a survey, by itself, disrupts the continuity of adverse possession as a matter of law. Rather, we hold that the conducting of the survey must be accompanied by an intent to recover possession or exercise dominion over the property.

{¶ 42} In the case sub judice, we find that Crown Equipment's 1989 survey was accompanied by an intent to exercise dominion over the border area to sufficiently disrupt the 21–year period required for adverse possession. Crown Equipment entered the land in May 1989 through its agent, Holt, to conduct the survey of the entire property, including the border area, in preparation for purchasing the property. Holt posted flags demarcating the boundaries of the property, and accurately depicted the border area as Crown Equipment's.[6] Thereafter, Holt recorded the survey with the Auglaize County Engineer's Office, which gave notice to the world that Crown Equipment intended to possess and control the entire property. Keeping in mind that adverse possession is disfavored and that we must strictly construe the facts in favor of Crown, we find that these acts—the 1989 survey, placement of the survey flags, and the subsequent recording of the survey, taken together, indicate entry upon the border area to conduct the survey with the intent to exercise dominion and recover possession of the border area so as to disrupt the 21–year statutory period. Thus, we find that the Bushmans failed to show by clear and convincing evidence that they possessed the border area for the requisite 21–year period and, consequently, their claim of adverse possession fails. Therefore, we find that the trial court erred as

---

6. We note that, although Dennis Bushman recounted that he could not recall whether flags or markers were placed around the border area at that time, Holt stated that it was his practice to place small wire post flags in the ground at the corners of the lots located within the area he surveyed. When direct evidence is lacking, evidence of one's habit or business routine is sufficient to prove that one's conduct "on a particular occasion was in conformity with the habit." Evid.R. 406; see also *Deskins v. Cunningham*, 3d Dist. No. 14–05–29, 2006-Ohio-2003, 2006 WL 1061979.

a matter of law by denying Crown's motion for summary judgment and by granting the Bushmans' motion for summary judgment.

{¶ 43} Accordingly, we sustain Crown's first assignment of error.

### Assignment of Error No. II

{¶ 44} In its second assignment of error, Crown contends that even if the 1989 survey did not disrupt the requisite 21–year period, the trial court erred in finding that the Bushmans actually, openly, notoriously, and exclusively possessed the border area. Specifically, Crown asserts that the Bushmans' use of the border area does not support a claim for adverse possession; that the trial court's reliance on *Kaufman v. Geisken Ents.*, 3d Dist. No. 12–02–04, 2003-Ohio-1027, 2003 WL 832678, was misplaced; and, that its unequivocal acts of dominion and control over the border area precludes any claim of exclusive possession by the Bushmans.

{¶ 45} With respect to the actual, open, notorious, and adverse elements required for adverse possession, Crown argues that the Bushmans' primary use of the border area was mowing and cultivation of a minimal area, which fails to satisfy any of these elements.[7]

{¶ 46} Regarding the open element, Crown did not clarify how the Bushmans failed to satisfy it. " 'To be open, the use of the disputed property must be without attempted concealment.' " *Walls v. Billingsley* (Apr. 28, 1993), 3d Dist. No. 1–92–100, 1993 WL 135808, quoting *Hindall v. Martinez* (1990), 69 Ohio App.3d 580, 583, 591 N.E.2d 308.

{¶ 47} Here, it is evident that the Bushmans satisfied the open element for adverse possession. The Bushmans removed dead trees and the rusted remnants of the old fence line from the border area, planted a tree in the border area, mowed the border area, constructed a grape arbor in the border area, and cultivated a garden, of which a small portion encroached upon the border area, without any attempt to conceal these activities from anyone, including Crown. Thus, we find that the Bushmans used the border area openly for purposes of adverse possession.

{¶ 48} Unlike the open element, the actual, notorious, and adverse elements necessary to establish ownership by adverse possession require more than merely conducting activities on the disputed property where others can

---

7. Crown does not assert that the Bushmans failed to continuously use the border area for the requisite 21–year period. It is undisputed that the Bushmans mowed the border area and maintained their grape arbor and a small portion of their garden in the border area continuously since 1979.

observe. For instance, to show actual possession, "[a]ctions of the claimant referable to the ownership claimed are required * * *, such as building on the premises or fencing them to define the limits of the claim and to warn the true owner of the necessity for him to take protective measures." *Briegel v. A.E. Knowlton* (June 20, 1989), 3d Dist. No. 1–87–45, 1989 WL 71130, citing *Clark v. Potter* (1876), 32 Ohio St. 49. Likewise, " '[t]o be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises. * * * In other words, the use of the property must be so patent that the true owner of the property could not be deceived as to the property's use.' " *Walls,* supra, quoting *Hindall,* 69 Ohio App.3d at 583, 591 N.E.2d 308. Similarly, regarding the adverse element, a claimant must have intended " 'to claim title, so manifested by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim.' " *Grace,* 81 Ohio St.3d at 581, 692 N.E.2d 1009, quoting *Lane v. Kennedy* (1861), 13 Ohio St. 42.

{¶ 49} In the case sub judice, Dennis Bushman testified that he removed any indication of a possible boundary line by removing the old fence line and trees along it shortly after purchasing his property in 1978. Thereafter, he planted a tree on the border area, but he did not construct another fence, enclose the border area in any way, or construct anything on the border area except the grape arbor, which was built on the northern edge of the border area near the Bushmans' actual property line. Aside from the grape arbor and tree, the only other two items encroaching upon the border area were a small portion of the Bushmans' garden, including drainage tiles, and a portion of the fence, installed by the Bushmans' predecessors, extending from behind the Bushmans' shed.[8] Like the grape arbor, both the portion of the garden and the portion of the fence encroached upon the northern edge of the border area, close to the Bushmans' actual property line.

{¶ 50} Also, Dennis Bushman admitted that it was difficult to identify the actual boundary line between his property and Crown's; that he never asserted ownership of the border area during his correspondence with Crown, and, in fact contacted Crown in order to purchase the border area; that only a small portion of his garden encroached upon the border area; and, that his primary activity on the border area was mowing the grass. These facts indicate that the Bushmans' use of the border area did not suffice to define the limits of their claim or warn

---

8. We note that the Bushmans also allege that they placed a movable gas tank and piled wood near the fence behind their shed. However, Dennis Bushman testified that the gas tank had not been present during the entire 21–year period at issue. In fact, Dennis Bushman testified that he did not install the gas tank until sometime after the 1989 survey was conducted.

Crown of the necessity to take protective measures, was not so patent that Crown could not be deceived as to the property's use, and did not so manifest their intent as to raise a presumption that Crown's claim of ownership had been extinguished to satisfy the actual, notorious, and adverse elements, respectively.

{¶ 51} This is particularly true given the well-established notion that "merely mowing grass, regardless of the intent of the claimant, is insufficient as a matter of law to amount to the required possession." *Richardson v. Winegardner* (Nov. 2, 1999), 3d Dist. No. 1–99–56, 1999 WL 997293, citing *Montieth,* 68 Ohio App.2d at 225, 22 O.O.3d 346, 428 N.E.2d 870; *Klinger v. Premier Properties* (Nov. 17, 1997), 3d Dist. No. 8–97–10, 1997 WL 722771; *Suever v. Kinstle* (Nov. 29, 1989), 3d Dist. No. 1–88–24, 1989 WL 145169; and *Briegel,* supra; see also *Meyer v. Pockros* (1924), 18 Ohio App. 506. While we acknowledge that in addition to mowing, the Bushmans also planted a tree and maintained both their grape arbor and a small portion of their garden in the border area, we disagree with the trial court that these actions resemble those in *Kaufman,* 2003-Ohio-1027, 2003 WL 832678. In *Kaufman,* this court determined that claimants of ownership by adverse possession did, in fact, acquire the disputed property by adverse possession where they used the disputed land for recreation, planted and pruned trees, cultivated asparagus, parked cars, ran a go-cart, stored firewood, piled debris, placed burn barrels on the property, and generally maintained the property. Instead, the Bushmans' use of the border area more closely resembles that in cases where this court has held that the claimant did not satisfy the requirements of adverse possession by mowing the grass and doing minor landscaping or cultivation. See, e.g., *Suever* (finding yearly mowing of grass, raking of leaves, and minor landscaping insufficient to obtain title by adverse possession), *Richardson* (finding claimant's primary use of mowing the grass insufficient to obtain title by adverse possession, but affirming finding of adverse possession where true owner acquiesced), and *Briegel* (finding mowing of grass and use for recreational purposes insufficient to obtain title by adverse possession). Thus, we find that the Bushmans failed to show by clear and convincing evidence that they actually, notoriously, and adversely possessed the border area.

{¶ 52} Additionally, Crown asserts that the Bushmans' use of the property was not exclusive, because Crown exercised its dominion over the border area when its agent conducted the 1989 survey.

{¶ 53} To be exclusive, a claimant's "use of the disputed property must be the type of possession that would characterize an owner's use." *Klinger,* citing Powell, Real Property (1995) 91–26, Section 1013(2)(d). Further, a claim-

ant's "use of the property must be exclusive of the true owner entering onto the land and asserting his right to possession." *Klinger*, referencing *Walls*.

{¶ 54} Here, as we stated in our discussion of the Bushmans' first assignment of error, Holt entered the border area on behalf of Crown Equipment, then the true owner, to stake out the property for the purposes of securing the purchase of, and acquiring control over, the border area. Thus, we find that the Bushmans' use of the border area was not exclusive of the true owner. Therefore, we find that the trial court erred as a matter of law by denying Crown's motion for summary judgment and by granting the Bushmans' motion for summary judgment.

{¶ 55} Accordingly, we sustain Crown's second assignment of error.

### Assignment of Error No. III

{¶ 56} In its third assignment of error, Crown contends that the trial court erred in finding that the Bushmans' predecessors in interest had adversely possessed the border area because their conduct was never an issue before the trial court.

{¶ 57} In response, the Bushmans concede that the parties stipulated that tacking was not an issue before the trial court and assert that it erroneously included their predecessors in interest in its finding that they satisfied the requisites to gain title of the border area by adverse possession.

{¶ 58} Because the Bushmans concede that the parties stipulated that tacking was not an issue, we find that the trial court erred in finding that the Bushmans' predecessors in interest adversely possessed the border area.

{¶ 59} Accordingly, we sustain Crown's third assignment of error.

{¶ 60} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court with direction to grant Crown's motion for summary judgment and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

SHAW and WALTERS, JJ., concur.

WALTERS, J., sitting by assignment in the Third Appellate District.