[Cite as *Bailey v. George*, 2017-Ohio-767.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DAVID A. BAILEY | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 15 CO 0029 |
| VS. | ) | |
| | ) | OPINION |
| PATRICK A. GEORGE, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common
Pleas of Columbiana County, Ohio
Case No. 2014-CV-469

JUDGMENT:

APPEARANCES:
For Plaintiff-Appellee    Attorney Michael Davis
124 East Fifth Street
East Liverpool, Ohio 43920

For Defendants-Appellants    Attorney Dominic Frank
1717 Lisbon Street
East Liverpool, Ohio 43920

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: March 3, 2017

DeGENARO, J.

{¶1} Defendants-Appellants, Patrick A. George, et al., appeal the trial court's summary judgment in favor of Plaintiff-Appellee, David A. Bailey on his quiet title claim based upon adverse possession. Although the Georges assert otherwise, there are no genuine issues of material fact; David established by clear and convincing evidence that he and his predecessors-in-interest maintained exclusive, open, notorious, continuous, and adverse use of the disputed property for over 21 years. Accordingly, the Georges' assignment of error is meritless and the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} On September 10, 2014, David filed an adverse possession suit against the Georges, requesting quiet title relief, or alternatively, an easement by prescription. The lawsuit concerned a 12 by 154 foot strip of land located on the edge of the Georges' property, where it abuts David's property. David's complaint disclosed that he acquired title to the real property in 1994 via quit-claim deed from his parents, Roy and Doris Bailey. The elder Baileys had purchased the property on September 6, 1955. The Georges acquired title to their adjacent property in 2001 via a survivorship warranty deed from John and Kathleen Densmore. David attached the pertinent deed records to his complaint along with a tax parcel map showing the properties and the contested strip. The Georges filed an answer and counterclaim for quiet title and trespass, which David answered.

{¶3} David filed a motion for summary judgment, alleging that there was no genuine issue of material fact that he had established by clear and convincing evidence that the use of the contested strip by him and his predecessors-in-interest was open, exclusive, notorious, adverse, and continuous for a period of at least twenty-one years. He supported the motion with affidavits from himself; his sister, Joy Maola; his live-in partner of sixteen years, Elizabeth Talbott; and professional land surveyor Keith Chamberlin. Attached to the affidavits were deed records and Chamberlin's survey map, legal description and closure report regarding the contested strip.

{¶4}    The affidavits established that beginning in 1959, David's father Roy began making improvements and renovations to their home, adding rooms and a new drainage system. David, who was born in 1948, assisted Roy with the renovations, and removed rocks, soil and other debris surrounding the existing structure and stored the debris along the contested strip. David and Roy used a motor vehicle and wheel barrel to move and spread the debris and material throughout the strip. David never received permission to use, maintain or possess the contested strip of land.

{¶5}    At the same time Roy and David began maintaining the contested strip, by cutting down trees, trimming trees and hedges, picking up fallen debris and clearing out the area. David helped Roy continue this maintenance except for two years in 1968-1970 when he was serving in the Army in Vietnam.

{¶6}    Maola lived at the Bailey family property from her birth in 1955 until 1976, including the two years David was in Vietnam. She stated that during that time Roy always maintained the contested strip by cutting down trees, trimming the trees and hedges, raking and picking up fallen leaves and burning vegetation.

{¶7}    When David returned from Vietnam in 1970, he lived less than two blocks away from his parents, and averred Roy had continued to maintain the contested strip in the same manner as when he left, with David frequently helping Roy in the same manner as he had in the past.  At this time they also began to excavate, grade and level the contested strip.

{¶8}    David and Roy verbally prevented others from using the contested strip. David pushed soil into a mound with his tractor to prevent others from riding recreational vehicles and 4X4 vehicles on the contested strip.

{¶9}    In April 1994, David's parents transferred the property to him and he continued to maintain the contested strip. After Roy's death in 1998, David said his involvement in the maintenance of the property increased, but did not specify how. After his mother's death in 2003, David and Talbott moved into the property, and that year constructed a building over part of the contested strip.

{¶10} Talbott averred she lived nearby the property with David until 2003, when she moved there with him. She confirmed that during that 16-year period David maintained the contested strip of land cutting down trees, trimming the trees and hedges, picking up fallen leaves and burning vegetation, along with excavating, grading and levelling the contested strip with his tractor. She also confirmed David prevented others from using the contested property.

{¶11} The Georges opposed the motion contending there were genuine issues of material fact regarding each element of adverse possession, attaching in support their affidavits and those of Robert George and Dale Garver. Importantly, the Georges presented no evidence regarding the condition or maintenance of the contested strip between 1955 and 2001, a 42 year time frame.

{¶12} Patrick averred he was the fee simple owner of his property since May 2001, and at that time the contested strip was overgrown with fallen trees, brush, vegetation, weeds and debris.  When he leased the property to Dale and Jody Garver in September 2008, the contested strip became more overgrown and neglected. He averred that since taking possession of his property in 2001, he and his wife Aimee continuously maintained and exercised exclusive control over the contested strip.  Aimee's affidavit supported her husband's assertions.

{¶13} Robert George stated that in 2001 when Patrick purchased his property, the contested strip was overgrown and he used his own riding mover over a three day period to clear the contested strip.   Dale Garver stated that he and his wife leased the Georges' property from September 2008 through April 2012. He said that during his tenancy, he and multiple friends used the contested strip as a trail for riding recreational and 4x4 vehicles. Garver said that David never told him to cease and desist using the contested strip as a riding trail.

{¶14} After David filed a reply in support of his summary judgment motion the trial court granted summary judgment in favor of David, concluding he had proven all elements of adverse possession by clear and convincing evidence and that the Georges had failed to raise any genuine issues of material fact. Accordingly, the trial

court quieted title in favor of David regarding the contested strip of land and concluded the easement by prescription claim was moot.

## Summary Judgment

{¶15} In their sole assignment of error, Appellants assert:

The trial court erred in granting summary judgment to appellee by finding their interest in the disputed tract of land vested in 1980.

{¶16} A trial court's summary judgment is subject to de novo review. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d 826, 829, 586 N.E.2d 1121 (9th Dist.1990). Summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law, based upon the filing contemplated by the rule. Civ.R. 56. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

{¶17} "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d 1009 (1998), syllabus. Clear and convincing is a degree of proof which will produce a firm belief in the trier of fact that the evidence has established the party's allegations. *State v. Eppinger*, 91 Ohio St. 3d 158, 743 N.E. 2d 881, 887 (2001). Importantly, "the elements of adverse possession are stringent[.]" Thus, failing to prove any element defeats a claim for adverse possession. *Merriner v. Goddard*, 7th Dist. No. 08-MO-2, 2009-Ohio-3253, ¶ 20, citing *Grace* at 579. We will

discuss each element in turn.

### *Adverse and Hostile Use*

**{¶18}** "To establish hostility it is not necessary to show that there was a heated controversy, or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate." *Kimball v. Anderson*, 125 Ohio St. 241, 244, 181 N.E. 17 (1932). Rather, any use of the land inconsistent with the rights of the titled holder is adverse or hostile. *Id.* To be adverse, "there must have been an intention on part of the person in possession to claim title, so manifested by his declarations or acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim." *Lane v. Kennedy*, 13 Ohio St. 42, 47 (1861). "[I]ntent is objective rather than subjective in determining whether the adversity element of adverse possession has been established[.]" *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481, ¶ 13. In sum, adverse use is described as non-permissive use. *McCune v. Brandon*, 85 Ohio App.3d 697, 700, 621 N.E.2d 434 (5th Dist.1993).

**{¶19}** The affidavits in support of David's motion establish how he and his predecessors exercised control and dominion over the property rights of the legal titleholder by cutting down trees, trimming trees and hedges, and raking and picking up fallen leaves and other debris. They used the minerals gathered and collected for personal purposes such as having fires. They later excavated and graded the soil. These acts improved the nature and appearance of the land. Moreover, David and his predecessors verbally prevented others from using the land and they never received permission to use the land.

**{¶20}** The Georges challenge the affidavits David provided, claiming they are self-serving and that as a result David failed to meet his initial *Dresher* burden in moving for summary judgment. However, in *Ochsenbine v. Cadiz*, 166 Ohio App.3d 719, 2005-Ohio-6781, 853 N.E.2d 314, ¶ 25 (7th Dist.), also a quiet title action, this court rejected a similar argument. There, the plaintiffs argued that the defendants failed to meet their initial burden as summary judgment movants because the

affidavits upon which they relied were "self-serving, conclusory, and speculative." *Id.* at ¶ 25. This court disagreed, explaining:

> There is, however, no case law supporting the idea that the moving party may not rely on self-serving affidavits. To the contrary, "the rule of law regarding self-serving affidavits submitted during a summary judgment exercise applies only to the nonmoving party's use of such affidavits." *Belknap v. Vigorito*, 11th Dist. No. 2003–T–0147, 2004-Ohio-7232, 2004 WL 3090214, ¶ 26.

*Ochsenbine* at ¶ 25-28.

**{¶21}** The Georges also attack the credibility of David's affiants, noting that David and his sister were children at the time their father began work on the property and the contested strip. However, the Georges presented no competing evidence challenging the credibility of the affiants. The Georges could have deposed them, thus subjecting them to cross-examination, however, they chose not to.

**{¶22}** Further the Bailey affiants state that they had personal knowledge regarding all averments in their affidavits. "In the absence of any indication that the affidavits filed in support of Appellees' motions are not based on the necessary personal knowledge, it is generally accepted that '[a] mere assertion of personal knowledge satisfies Civ.R. 56(E) if the nature of the facts in the affidavit combined with the identity of the affiant creates a reasonable inference that the affiant has personal knowledge of the facts in the affidavit.' " *Ryan v. Huntington Trust*, 2015-Ohio-1880, 35 N.E.3d 19, ¶ 24 (7th Dist.), quoting *Residential Funding Co., LLC v. Thorne*, 6th Dist. No. L–09–1324, 2010-Ohio-4271, ¶ 70.

**{¶23}** The Georges argue a genuine issue of material fact exists because David has only presented evidence of mere maintenance of the contested strip, relying on *Grace, supra*. In *Grace*, the Ohio Supreme Court held that where the plaintiffs mowed the grass, parked cars, let their children play and stored oil drums, firewood and a swing set on the property, their claim for adverse possession failed because

Hochs requested permission to use the property. *Id.* at 581-582. The outcome of the case did not turn on the character of the use but rather because the party asserting adverse possession requested permission to use the property there, which destroyed the adverse element. *Id.*

**{¶24}** This case is distinguishable because there is no evidence that David or his predecessors-in-title requested or received permission to use the contested strip. Moreover, there was evidence that the contested strip was not just merely maintained by David; it was eventually graded, excavated and leveled, and used for storage purposes. Thus, there is no genuine issue of material fact that David's use of the contested strip was adverse.

### Open and Notorious Use

**{¶25}** " 'To be open, the use of the disputed property must be without attempted concealment.' " *Crown Credit Co. v. Bushman*, 170 Ohio App.3d 807, 2007-Ohio-1230, 869 N.E.2d 83, ¶ 46 (3d Dist.), quoting *Walls v. Billingsley*, 3d Dist. No. 1–92–100, 1993 WL 135808 (Apr. 28, 1993). "To be notorious, the use must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises." *Hindall* at 583. "The law presumes that an owner of property knows the condition and status of his land. Thus, an owner is charged with the knowledge that a party is open and notoriously occupying his property where that occupancy is plainly visible to him." *Id.*

**{¶26}** The affidavits supporting David's motion establish David and his predecessors cut down trees, trimmed trees and hedges, raked leaves and burned vegetation on the contested land, and later excavated, graded and leveled the land, thereby changing the geographical and terrain features. It was also used for storage purposes. The contested strip is located in a residential area within sight of other neighboring properties.

**{¶27}** Moreover, the facts in David's affidavits are undisputed with regard to the time period between 1959 and May 9, 2001; the Georges failed to provide any

evidence to refute the facts alleged for that 42 year period. Thus, there is no genuine issue of material fact that David's use of the contested strip was open and notorious.

### Exclusive Possession

**{¶28}** "Use of the property does not have to be exclusive of all individuals. Rather, it must be exclusive of the true owner entering onto the land and asserting his right to possession. It must also be exclusive of third persons entering the land under their own claim of title, or claiming to have permission to be on the premises from the true titleholder." *Kaufman v. Geisken Enterprises*, Ltd., 3d Dist. No. 12-02-04, 2003-Ohio-1027, ¶ 39.

**{¶29}** The evidence provided by David demonstrated that he and his family owned their property since September 6, 1955. David's predecessors entered onto and began using the contested strip in 1959. No one other than David and his family used the contested strip, and they prevented others from using it. These facts are also undisputed by the Georges with respect to the time period between 1959 and May 9, 2001. Thus, there is no genuine issue of material fact that David's use of the contested strip was exclusive.

### Continuous Use for at Least 21 Years

**{¶30}** In order to establish the necessary twenty-one year period for an adverse possession claim, a party may add to their own term of adverse use any period of adverse use by prior succeeding owners in privity with one another. *Zipf v. Dalgarn*, 114 Ohio St. 291, 151 N.E. 174 (1926), syllabus.

**{¶31}** The undisputed evidence demonstrates that David and/or his predecessors continuously used the contested strip for a period of 42 years prior to May 9, 2001. David's sister stated that during the two years that he was in Vietnam, Roy continued to maintain the contested strip; thus that event does not interrupt the 21 year period. The evidence presented by the Georges concerns use of the contested strip in 2001 or later; well after the expiration of the 21 year period. The Georges' evidence does nothing to refute David's clear and convincing evidence that the use of the contested strip by him and his predecessors was open, exclusive,

notorious, adverse, and continuous for a period from 1959 until at least 1980.

**{¶32}** "When adverse possession is continued for a period of greater than 21 years, the rights of the record property owner are cut off, and those rights are vested in the adverse possessor. * * * When this occurs, the title of the record property owner is destroyed, and title is vested in the adverse possessor, as a perfect and indefeasible fee." (Internal citations omitted.) *Judd v. Jackson*, 12th Dist. No. CA2002-11-291, 2003-Ohio-6383, ¶ 13. Thus, there are no genuine issues of material fact that David continuously used the contested strip for at least 21 years.

**{¶33}** In sum, David met his initial summary judgment burden to demonstrate there were no genuine issues of material fact regarding all elements of adverse possession. The Georges failed to meet their reciprocal burden since the evidence they provided in opposition related only to the condition of the contested strip after 2001. They provided no evidence to refute David's clear and convincing evidence that he or his predecessors openly, exclusively, notoriously, adversely, and continuously used and possessed the contested strip from 1959 until at least 1980. Accordingly, the Georges' sole assignment of error is meritless, and the trial court's summary judgment is affirmed.

Waite, J., concurs.

Robb, P. J., concurs.