[Cite as *NC Ents., L.L.C. v. Norfolk & W. Ry. Co.*, 2024-Ohio-1454.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| NC ENTERPRISES, LLC | | C.A. No.     30652 |
|      Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| NORFOLK AND WESTERN RAILWAY COMPANY, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No.     CV-2021-08-2641 |
|      Appellant | | |

DECISION AND JOURNAL ENTRY

Dated: April 17, 2024

---

STEVENSON, Presiding Judge.

**{¶1}** Appellant Norfolk Southern Railway Company ("Norfolk Southern") appeals from the Summit County Court of Common Pleas granting summary judgment in favor of Appellee NC Enterprises, LLC ("NCE") on its adverse possession claim. When applying the undisputed facts to applicable law, this Court concludes summary judgment was properly granted. Accordingly, the trial court's judgment granting NCE's motion for summary judgment is affirmed.

I.

**{¶2}** This is an adverse possession case and the underlying facts are not in dispute. NCE purchased property located at 409 S. Munroe Falls Road in Tallmadge, Ohio, on December 8, 1997 ("the NCE Property"). The NCE Property consists of two parcels, parcel numbers 5101140 and 5101141.

**{¶3}** The NCE Property abuts two parcels owned by Norfolk Southern, parcel numbers 5100010 and 5108560 (collectively "the Parcels"). Norfolk Southern is the successor by merger

to Norfolk and Western Railway Company. Parcel number 5100010 consists of 1.04 acres and parcel number 5108560 consists of .4 acres. The Parcels are adjacent to a larger 34.2-acre parcel owned by Norfolk Southern, parcel number 7101227. Parcel number 7101227 is not at issue in the litigation between NCE and Norfolk Southern.

{¶4} Until Norfolk Southern's posting of for sale signs in 2021, Steven Geer, NCE's managing member and president, thought NCE owned the Parcels. Geer's company, CLS Finishing, Inc., was a tenant at the NCE Property for three or four years prior to NCE's 1997 purchase.

{¶5} NCE started conducting landscaping activities on the Parcels in April 1998. NCE hired Ed Brooks, a landscaper with TLC, to perform landscaping and maintenance from 1998 – 2003; Eric's Lawn Maintenance to perform landscaping and maintenance from April – August 2004; and Joseph Lowther Lawncare and Landscaping for landscaping and maintenance from September 2004 – present. JALCO performed ground clean-up, including tree removal, weeding, grading, seeding, straw and fertilizer, in September and October 2004, and Ingersoll performed fertilization services in 2005 and 2006.

{¶6} Landscaping and maintenance included mowing; fertilizing; weeding; edging; mulching; trimming bushes, shrubs, and trees; planting; and winter and spring clean-ups. This work was performed on both the NCE Property and the Parcels.

{¶7} Neither Brooks nor Lowther saw a no trespassing sign or similar signage on the Parcels. Further, neither of them saw a Norfolk Southern representative on the Parcels or ever communicated with a Norfolk Southern representative.

{¶8} NCE started performing non-landscaping activities on the Parcels on September 5, 2000, when it installed fencing. The fencing was the first structure NCE installed on the Parcels.

NCE installed additional fencing in March 2003 and performed fencing repairs in May and December 2005.

{¶9} To alleviate flooding, NCE installed a 10-inch PVC pipe that ran from the NCE Property to a catch-basin located on Norfolk Southern's parcel, parcel number 5100010, in August 2011. Bill Ward is the owner and president of W.H. Ward Excavating & Grading, LLC, the company NCE hired to complete this project. Ward explains that his company installed the pipe with limestone and hydraulic cement at the catch basin and manhole. They also backfilled trenches, cleaned up an excess spoil load, and repaired asphalt.

{¶10} In April through August 2017, NCE cleaned and graded the Parcels' waterway and creek edge. NCE also paid for limestone delivery and to have stumps and brush removed, hauled, and buried on the Parcels. Asphalt grindings were placed on the north side of the creek bank and, for water drainage purposes, concrete rip rap was used to line the ravine's bank on the Parcels. NCE again hired Ward's company to perform this work.

{¶11} Like Brooks and Lowther, neither Ward nor anyone from his company saw a no trespassing sign or similar signage on NCE Property. Further, Ward never saw a Norfolk Southern representative on the Parcels nor did he ever communicate with anyone from Norfolk Southern. NCE asserts that, since 1998 and at a minimum, it spent $155,087.72 on improvements, maintenance, and upkeep of the Parcels.

{¶12} It is undisputed that Norfolk Southern did not maintain the Parcels. Jesse Duperow, property manager in Norfolk Southern's real estate department, is unable to identify any person or entity sent by Norfolk Southern to the parcels between January 1998 and July 2020 to perform property maintenance. Further, Norfolk Southern does not dispute that it never gave NCE permission to use the Parcels. NCE does not dispute that Norfolk Southern paid the Parcels'

property taxes since 1998 and that it listed the Parcels for sale on April 1, 2020. Beginning in 2003, Norfolk Southern discussed selling the Parcels with different entities but the sales did not go through.

{¶13} In a July 2, 2020 letter, NCE notified Norfolk Southern that it was claiming ownership of the Parcels under adverse possession. Norfolk Southern disputed the claim on July 22, 2020. It is undisputed that the 21-year period for adverse possession would have had to begin on or before July 22, 1999.

{¶14} NCE filed a complaint against Norfolk Southern asserting adverse possession, quiet title, and unjust enrichment claims. After an answer was filed and discovery exchanged, NCE filed a motion for summary judgment and Norfolk Southern filed a cross-motion for summary judgment. The trial court granted NCE's motion, finding that it proved its adverse possession claim by clear and convincing evidence, and denying Norfolk Southern's cross-motion for summary judgment. Norfolk Southern timely appeals the trial court's decision, setting forth one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN HOLDING THAT APPELLEE NC ENTERPRISES, LLC MET THE REQUIREMENTS OF ADVERSE POSSESSION BY CLEAR AND CONVINCING EVIDENCE.**

{¶15} Norfolk Southern argues on appeal that the trial court erred in granting summary judgment and holding that NCE met its burden of establishing adverse possession by clear and convincing evidence. We disagree.

{¶16} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "This Court applies the same standard as the trial court, viewing

the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Ormandy v. Dudzinski*, 9th Dist. Lorain No. 10CA009890, 2011-Ohio-5005, ¶ 7.

{¶17} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶18} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show "there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party "may not rest upon the mere allegations or denials of the party's pleadings[.]" Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶19} To acquire title to property by adverse possession, the party claiming title "must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 580-581 (1988). The failure of proof as to any of the elements results in the failure to acquire title by adverse possession. *Id.* at 581. Clear and convincing evidence is that proof which establishes in the minds

of the trier of fact a firm conviction as to the allegations sought to be proved. *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

**{¶20}** "'Exclusive possession' means that the use of the property need only be exclusive of the title owner's or third person's entry upon the land coupled with an assertion of his right to possession or claim of title to the property." *Ormandy,* 9th Dist. Lorain No. 10CA009890, 2011-Ohio-5005 at ¶ 11. Hence, "the use need not be exclusive of all persons, but rather, exclusive only of those who assert either by word or act any right of ownership or possession of the land." *Id.*

**{¶21}** "Open use" means that there was no attempt to conceal the use of the property. *Crown Credit Co., Ltd. v. Bushman*, 170 Ohio App.3d 807, 2007-Ohio-1230, ¶ 46 (3d Dist.). Open use is distinguishable from notorious and adverse use in that the latter uses "require more than merely conducting activities on the disputed property where others can observe." *Bushman* at ¶ 48. "To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises. * * * In other words, the use of the property must be so patent that the true owner of the property could not be deceived as to the property's use." (Internal quotations omitted.) *Id.*

**{¶22}** To satisfy the "adverse use" element, the claimant "must have intended to claim title, so manifested by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim." (Internal quotations omitted.) *Bushman* at ¶ 48. This Court has stated that "[a]dverse or hostile use is any use inconsistent with the rights of the title owner." *Vanasdal v. Brinker*, 27 Ohio App.3d 298 (9th Dist.1985).

{¶23} The Ohio Supreme Court has held that "[i]n a claim for adverse possession, the intent to possess another's property is objective rather than subjective," so that the party in possession need not have intended to deprive the owner of the property at issue. *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, syllabus. Instead, the claimant need only have "possessed [the] property and treated it as the claimant's own" for the statutory period to satisfy the element of adverse use. *Id.*

{¶24} R.C. 2305.04 provides that "[a]n action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued[.]" The 21-year period begins to run when "there is some act of possession by the adverse claimant '* * * so open, notorious and hostile that it constitutes, in law, notice to the real owner.'" *Montieth v. Twin Falls United Methodist Church, Inc*, 68 Ohio App.2d 219, 225 (9th Dist.1980), quoting *Happ v. Dayton & Michigan RR. Co.*, 1 Ohio N.P. (N.S.) 337, 344 (1903).

{¶25} Norfolk Southern does not dispute that NCE started performing landscaping and maintenance on the Parcels in April 1998. It is Norfolk Southern's position that this "de minimis" lawn maintenance is insufficient for adverse possession. Norfolk Southern argues that, at a minimum, the 21-year period for adverse possession did not begin to run until 2000 when NCE made actual improvements to the Parcels. As Norfolk Southern disputed NCE's adverse possession claim on July 22, 2020, Norfolk Southern maintains that NCE failed to satisfy the requisite 21-year period and that the trial court erred in granting summary judgment.

{¶26} NCE asserts that 21-year period for adverse possession began to run when it first entered the property, not when it constructed its first structure. It is NCE's position that the trial court properly considered all its activities as a whole. Taking all its activities as a whole, NCE

argues that it exercised continuous, open, notorious, and exclusive dominion and control over the Parcels since April 1998 and that summary judgment was properly granted. We agree.

**{¶27}** At issue is whether the statute of limitations for adverse possession began to run in April 1998, when NCE started performing landscaping and maintenance at the Parcels, or in September 2000 when NCE first installed a structure on the Parcels. This Court has not explicitly addressed the issue of whether landscaping and maintenance may be combined with other acts to establish adverse possession. This Court has recognized, however, that "it is the act *or acts* of dominion over the subject property which underlies the burden of proving adverse possession." (Emphasis added.) *Montieth*, 68 Ohio App.2d at 222. In affirming the jury's adverse possession award, this Court similarly noted all of the appellee's acts on the disputed land in *Galehouse v. Geiser*, 9th Dist. Wayne No. 05CA0037, 2006-Ohio-766, ¶ 16. The appellee's acts included storing personal property, maintaining a swimming pool, building rabbit cages, planting trees and shrubs, and lawn mowing. *Id.*

**{¶28}** The Fifth District Court of Appeals addressed the issue of combining landscaping and maintenance with other acts in *Hall v. Dasher*, 5th Dist. Stark No. 2021CA00111, 2022-Ohio-1735. One issue in *Hall* was whether the trial court erred in granting the appellee's motion for summary judgment and awarding the adverse possession of a strip of the appellant's property. *Id.* at ¶ 28. The strip of land was located between a private road and property owned by the appellant. The appellees were neighboring landowners. The evidence established that the appellees used the private road for over 21 years to access their property and that, during this time, they maintained and made improvements to the strip of land. In addition to landscaping, mowing, and planting grass, the appellees performed other tasks on the strip. *Id.* at ¶ 85. The other tasks included maintaining a drywell and asphalt apron; renting "a Bob Cat to haul in dirt to fill in ruts and grade

and level the strip of land[;]" clearing "numerous piles of salvage that were on the strip of land[;]" bringing "in trucks to haul the salvage[;]" and hauling out "construction materials like concrete stone and brick." *Id.* Concrete, stone, and brick were also hauled onto the strip. *Id.*

{¶29} While the Fifth District recognized in *Hall* that "mere" maintenance is generally insufficient to establish adverse possession, it held that lawn maintenance activities may be combined with other activities to establish adverse possession. *Id.* at ¶ 84. The court stated:

> although lawn maintenance alone is not sufficiently open and notorious to establish adverse possession, such activity is relevant evidence of open and notorious use, and when *combined* with other activities under the proper circumstances, it may help to establish an adverse possession.

(Citation omitted.) (Emphasis added.) *Id.* When combining lawn maintenance activities with the other activities performed on the strip, the *Hall* court concluded that the appellees established their adverse possession claim and that summary judgment was properly granted. *Id.* at ¶¶ 84, 85.

{¶30} In *Hardert v. Neumann*, 4th Dist. Adams No. 13CA977, 2014-Ohio-1770, the Fourth District similarly addressed the issue of whether landscaping and maintenance may be combined with other activities to establish adverse possession. It was undisputed in *Hardert* that, starting in 1998 and because the disputed land was placed in the federal Conservation Reserve Program ("CRP"), the appellees only performed landscaping and maintenance on the disputed land. *Id.* at ¶¶ 4, 10, 11. From 1982 until 1997, however, it was undisputed that the appellees planted crops on the disputed property; removed trees and fencing; added topsoil; and removed a dirt road. *Id.* at ¶ 11.

{¶31} Like Norfolk Southern, the appellants argued in *Hardert* that "merely maintain[ing] the property" was insufficient and that the appellees failed to prove they used the disputed land openly and notoriously for the requisite 21 years. *Id.* at ¶ 10. The court disagreed, concluding:

We agree that by themselves incidental 'activities conducted merely to maintain the land, such as mowing, are generally not sufficient to establish adverse possession.' However, each claim of adverse possession must be decided upon its particular facts and contrary to [appellant's] arguments, there is no 'bright line' rule regarding such activities as cutting hay and mowing grass. This 'allows the court to consider the unique nature of the real property in question,' which 'is necessary since a use which notifies an owner in one locale that another is asserting an adverse claim to his land, may not be a sufficient use to so notify an owner in another area.' And although mowing and incidental maintenance by themselves may not always be 'sufficiently open and notorious to establish adverse possession, such activity is 'relevant evidence of open and notorious use, and when combined with other activities under the proper circumstances it may help to establish adverse possession.'

(Citations omitted.) *Id.* at ¶ 14. In affirming judgment in favor of the appellees, the appellate court in *Hardert* concluded that "the trial court did not err as a matter of law by considering the [appellees'] specific changes to the land, including enrollment in the CRP and associated mowing, as indicative of adverse possession." *Id.* at ¶ 16.

{¶32} The Seventh District similarly affirmed summary judgment on an adverse possession claim in *Bailey v. George*, 7th Dist. Columbiana No. 15CO0029, 2017-Ohio-767. In affirming summary judgment, the court noted in *Bailey* that while the appellees initially performed landscaping and maintenance on the disputed strip of land, including "cutting down trees, trimming trees and hedges, and raking and picking up fallen leaves and other debris[,] * * * [t]hey later excavated and graded the soil." *Id.* at ¶ 19. The court again noted in its decision that "there was evidence that the contested strip was not just merely maintained by [the appellee]; it was eventually graded, excavated and leveled, and used for storage purposes." *Id.* at ¶ 24. After combining the initial landscaping and maintenance activities with the later activities performed on the disputed strip, the court concluded in *Bailey* that the appellee established his adverse possession claim by clear and convincing evidence and it affirmed summary judgment in his favor. *Id.* at ¶ 33.

{¶33} We agree with the *Hall*, *Hardert* and *Bailey* courts that landscaping and maintenance can be combined with other acts such as grading, fencing, and placing other improvements on a structure to establish an adverse possession claim. These obvious signs of continued use may serve to notify a landowner that someone is using their property adverse to the landowner's interests. In this case, NCE started performing landscaping and maintenance in April 1998 and, beginning in September 2000, it erected permanent structures on the Parcels including the fence, drainage pipe, gravel, and concrete rip rap. Although landscaping and maintenance by itself may not be enough to acquire property by adverse possession, when combined with the other activities NCE performed on the Parcels, we conclude that NCE established its adverse possession claim by clear and convincing evidence. NCE established that it openly, exclusively, notoriously, adversely, and continuously used and possessed the Parcels for a period of at least 21 years.

{¶34} Norfolk Southern failed to meet its reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *Tompkins*, 75 Ohio St.3d at 449. It is undisputed that Norfolk Southern never maintained the Parcels nor did it give NCE permission to use the Parcels. While Norfolk Southern placed its entire property for sale a few times starting in 2003, which included the Parcels and its larger 34.2-acre parcel, it never told NCE to stop maintaining the Parcels nor did it put any restrictions on NCE while the property was listed for sale. Norfolk Southern never contacted NCE to tell it to stop maintaining and/or performing work on the Parcels. Norfolk Southern did not place no trespassing signs or similar signage on the Parcels alerting NCE to stay-off and/or that Norfolk Southern was claiming ownership of the Parcels. Other than arguing that alleged de minimis landscaping activities did not count toward the 21-year period for adverse possession, Norfolk Southern provided no evidence

to refute NCE's clear and convincing evidence that it openly, exclusively, notoriously, adversely, and continuously used and possessed the strips for over 21-years.

{¶35}  Accordingly, for the reasons set forth above, Norfolk Southern's sole assignment of error is without merit and the trial court's award of summary judgment in favor of NCE is affirmed.

III.

{¶36}  For the reasons set forth above, Norfolk Southern's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

LAURIE J. AVERY and NICHOLAS W. BARTLETT, Attorneys at Law, for Appellant.

FRANK G. MAZGAJ, Attorney at Law, for Appellee.