[Cite as *Adams v. Flinn*, 2026-Ohio-1177.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

GERALD C. ADAMS ET AL.,

Plaintiffs-Appellees,

v.

RICKEY L. FLINN ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 JE 0014

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 24-CV-97

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Frank J. Bruzzese*, Hanlin & Bruzzese, LLC, for Plaintiffs-Appellees

Rickey L. Flinn, Pro se, Defendant-Appellant

Dated:  March 31, 2026

---

———————

**WAITE, P.J.**

**{¶1}** Appellant Rickey L. Flinn filed a pro se notice of appeal challenging the judgment of the Jefferson County Court of Common Pleas granting adverse possession of three parcels of land to Appellees. Appellant generally disagrees with the decision to grant partial summary judgment as to part of the property, as well as the result of the bench trial for the remaining section of the property. However, the record fully supports the court's determination that Appellees proved adverse possession of the disputed land. The judgment of the trial court is affirmed.

<u>Facts and Procedural History</u>

**{¶2}** On February 23, 2024, Appellees Gerald C. and Sharon J. Adams filed a declaratory action and quiet title complaint against Appellant in the Jefferson County Court of Common Pleas alleging that they had acquired certain property at 4009 State Route 152, Richmond, Ohio, through adverse possession. In the alternative, Appellees contend that an easement in their favor had been established on the property, or that Appellant, who was their neighbor and claimed to own the property at issue, had acquiesced in the establishment of the existing border between the two properties. Appellees also asked the court to set the exact boundaries of all property in dispute, and sought injunctive relief.

**{¶3}** Appellees have lived at property adjacent to Appellant's property since July of 1998. Appellant acquired his interest in the adjacent property in January of 2016 from his mother. Appellees alleged that there were three areas of Appellant's property that were in dispute and that the court should quiet title in their favor as to all three areas.

Appellees attached a metes and bounds description and a survey of the disputed property completed in 2023 by surveyor Vince Dowdle. Appellees were told by their predecessor in interest, Mr. Males, that the disputed property was theirs, and they have treated the property as their own from the time they purchased their home. Appellees asserted that since at least 1998 a propane tank and water lines were installed on the property, retaining walls were built, and the land was graded. Appellees also contended they engaged in extensive landscaping, removed dead trees and planted new ones, maintained a cemetery for their deceased pets, installed bird baths and feeders, repaired a hillside slip, did all the mowing, and otherwise have maintained control of the property at issue for over 21 years, at great expense to themselves. The total area in dispute consists of approximately .19 acres.

{¶4} On March 26, 2024, Appellant filed an answer and counterclaim to Appellees' complaint raising ejection, trespass, conversion, and quiet title. On March 28, 2024, Appellees filed their answer to the counterclaim. On July 1, 2024, Melissa Jo Flinn was added as a defendant to Appellees' complaint due to her possible dower interest in the property. She agreed to be bound by the court's orders and judgments. We note that she is not a party to this appeal.

{¶5} On July 2, 2024, Appellees filed a motion seeking summary judgment. In support of the motion they attached the affidavit of Sharon Adams, a deposition of Appellant, and Appellant's answers to interrogatories and admissions. Other supporting affidavits and documents were later filed. On September 6, 2024, Appellant filed a response to the motion for summary judgment, along with supporting evidence.

{¶6}    The court granted partial summary judgment to Appellees on April 9, 2025, quieting title to what the court described as disputed Areas 1 and 2, and setting for bench trial the question regarding a very small section called Area 3.

{¶7}    On May 5, 2025 the court held a hearing in which the parties agreed that the judge would view the disputed property for purposes of clarifying the legal metes and bounds description of Areas 1, 2 and 3.  At the viewing, the court pointed out to the parties both the area over which title was quieted in its partial summary judgment entry, and the area still in dispute for trial.  Counsel for the parties placed stakes in the ground marking out these areas.  Photographs were taken, and Exhibit D of Appellees' complaint was marked with the locations of the stakes.

{¶8}    In a May 8, 2025 filing, captioned "Objection to Court View as a Basis for Modifying or Clarifying the Court's Order of Partial Summary Judgment," Appellant's counsel conceded that there was no dispute that the Appellees had met the definition of adverse possession and that the only dispute involved the metes and bounds description of Areas 1, 2 and 3.

{¶9}    On May 15, 2025, surveyor Vince Dowdle surveyed the property a second time and prepared a metes and bounds description of the three disputed areas.  He also prepared a plat map showing the areas quieted by the court's April 9, 2025 judgment and the area still in dispute for trial.  On June 21, 2025, the court filed a judgment entry finding that the new survey accurately described the disputed territories.  The court confirmed that partial summary judgment had been granted to Appellees concerning Areas 1 and 2, which consisted of .1434 acres.  Matters concerning Area 3 were yet to be resolved at

trial.  This area consisted of .0508 acres.  The new plat and new metes and bounds descriptions were attached to the entry.

{¶10}  On June 23, 2025, Appellant discharged his attorney and determined that henceforth he would represent himselve pro se.

{¶11}  On July 9, 2025, immediately prior to the start of the bench trial, a hearing was conducted in order to confirm that Appellees' trial exhibit 2 (the new plat and metes and bounds description of the property) accurately described the areas quieted by the April 9, 2025 judgment entry, and the area still in dispute for trial.  Appellant agreed that the metes and bounds description contained in the exhibit described the subject matter for trial.  (7/9/25 Tr., p. 13.)  At the conclusion of this hearing, by agreement of the parties, bench trial commenced over only the disputed Area 3.

{¶12}  At the conclusion of the trial, the court found that Appellees had proven by clear and convincing evidence that they had acquired the property in Area 3 by adverse possession, and fee simple title was quieted in their favor.  On July 28, 2025, the court entered final judgment.  Appellant Rickey L. Flinn filed a pro se notice of appeal on August 15, 2025, and is representing himself in this appeal.  Melissa Jo Flinn did not file an appeal in this matter.  For ease of understanding, the assignments of error will be treated together.

ASSIGNMENTS OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION BY DETERMINING THERE WAS NO ISSUE OF MATERIAL FACT AS IT RELATES TO AREAS 1 AND 2.  THEN PROCEEDING TO TRIAL ON AREA 3. EVIDENCE SHOWED PERMISSIVE USE, INTERRUPTED

POSSESSION, AND APPELLANT'S CONTINUED DOMINION. SUMMARY JUDGMENT WAS IMPROPER.

THE TRIAL COURT MADE ADDITIONAL FINDINGS OF FACT DURING ITS VIEW OF THE PROPERTY AFTER GRANTING PARTIAL SUMMARY JUDGMENT, WHICH IS AN ABUSE OF DISCRETION. RELIANCE ON PERSONAL OBSERVATION, SUCH AS VISIBILITY FROM A FORD EXPEDITION, WAS IMPROPER AND UNSUPPORTED BY THE RECORD.

THE ENTIRE CASE IS FULL OF EVIDENCE SHOWING THAT THE PLAINTIFF DID NOT HAVE EXCLUSIVE CONTROL AND USE OF THE PROPERTY. THEIR USE WAS PERMISSIVE, SPORADIC, AND INTERRUPTED. APPELLANT CONSISTENTLY USED THE PROPERTY FOR TAXES, TIMBER, LIVESTOCK, AND HUNTING. THEREFORE, THE TRIAL COURT SHOULD NOT HAVE AWARDED THE PROPERTY TO THE PLAINTIFF. IT'S NOT CLEAR AND CONVINCING EVIDENCE.

{¶13} Although Appellant's pro se brief lists three assignments of error, his brief contains no actual argument for any assignment of error. It contains only summary conclusions as to each assignment. Most of the brief consists of quoted material from a 1998 Ohio Supreme Court case. While Appellant's later reply brief contains bullet points responding to issues raised by Appellees in their brief, nothing in either Appellant's initial brief or his reply brief can be considered as actual argument on appeal. As such, the

assignments will be addressed as a whole, and we will make an attempt to address the purpose of this appeal and Appellant's relevant concerns.

**{¶14}** This case was decided on the claim of adverse possession. "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Bailey v. George*, 2017-Ohio-767, ¶ 17 (7th Dist.), citing *Grace v. Koch*, 81 Ohio St.3d 577 (1998), syllabus. To be adverse, "there must have been an intention on part of the person in possession to claim title, so manifested by his declarations or acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim." *Id.* at ¶ 18, citing *Lane v. Kennedy*, 13 Ohio St. 42, 47 (1861). "[A]ny use of the land inconsistent with the rights of the titled holder is adverse or hostile." *Id.* "Clear and convincing evidence" is evidence that produces a firm belief or conviction in the trier of fact regarding those facts sought to be established. *In re M.B.*, 2025-Ohio-4837, ¶ 28 (7th Dist.). "[T]he elements of adverse possession are stringent" and failing to prove any element defeats a claim for adverse possession. *Merriner v. Goddard*, 2009-Ohio-3253, ¶ 20 (7th Dist.), citing *Grace* at 579.

**{¶15}** This appeal involves both the partial summary judgment granted as to Areas 1 and 2, and judgment following a bench trial with respect to Area 3. Although Appellant mentions a number of times that the trial court abused its discretion, "abuse of discretion" is not the standard we must use on review of this case. An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must

determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995).

{¶16} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist. 1997).

{¶17} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

Case No. 25 JE 0014

**{¶18}** A different standard of review applies to the judgment arrived at following the bench trial in this case. Factual determinations in a bench trial will not be overturned as long as they are supported by "some competent, credible evidence going to all the essential elements of the case." *Bosak v. Kalmer*, 2002-Ohio-3463, ¶ 36 (7th Dist.), citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

**{¶19}** Appellees correctly rely on this Court's *Bailey* case to provide guidance as to the type of evidence needed to support a finding of adverse possession. *Bailey* was decided on summary judgment. The adverse use of the land in *Bailey* included: cutting down trees, trimming trees and hedges, raking and picking up fallen leaves, taking materials from the property for personal use, excavating and grading the soil, and improving the nature and appearance of the land.

**{¶20}** Appellees supported their claim of adverse possession with their own affidavits, numerous attachments to those affidavits, and the deposition and answers to interrogatories of Appellant and Melissa Jo Flinn. The court also held a hearing on the motion for summary judgment on October 17, 2024, where the court considered the oral arguments presented. This record reveals that all the elements used to support adverse possession in *Bailey* also appear in the instant case. Appellees in this matter showed that the propane tank was permanently affixed to the property on a cement slab and was installed prior to 1998, and that it has always supplied Appellees' home. They showed that the water line was a permanent structure installed on the disputed property also prior to 1998 and that Appellees owned and operated the water line since 1998. They showed that they had expended more than $20,000 grading and landscaping the disputed property; mowed and gardened on the property; installed bird feeders and bird baths;

planted, maintained and removed trees as needed; planted shrubs and flowers; repaired a hillside slip; installed a retaining wall; and used the property as a pet cemetery since 2002. They showed that they had exclusive control of the property since 1998, were open and notorious in their use of the property, and that their control had been continuous since 1998. They showed that they have treated the disputed property as their own since 1998, and that Appellant and his predecessor acquiesced to Appellees' boundary line at all times, having full knowledge of what was transpiring. While Appellant's mother apparently owned the property until Appellant acquired it in 2015, Appellant visited Appellees' property many times since becoming owner of the property. He personally observed many of Appellees' activities on the property, passed by the property daily, and at no time prior to the commencement of this action did he file a trespass or any quiet title action regarding the disputed property.

{¶21} Appellant's own deposition testimony did not contradict Appellees' evidence. He admitted that he did not know where the property lines were. He could not dispute that Appellees moved into their property in 1998. He also admitted he had no idea when the propane tank was installed (although he testified it might have been there since 1998 or earlier); that he had no idea when Appellees' water line was installed; how long ago the landscaping had been done; when the bird feeders were installed; how long the trees that Appellees planted had been there; how long Appellees' garden had been there; or whether Appellees had ever graded the property or repaired a slipped hillside. He admitted that he had never expended any money regarding the propane tank, the water line, the landscaping, the garden, or mowing the grass. He admitted that Appellees were the only persons who mowed the grass, maintained the propane tank, the garden,

the trees, the bird feeders, and otherwise took care of the disputed area. He had no knowledge any pet cemetery was located on the disputed property.

{¶22} The trial court concluded that the disputed property consisted of three areas. Area 1 is immediately adjacent to the rear of Appellees' house and contains the propane tank, landscaping, bird feeders and bird baths. Area 2 is parallel to Appellees' driveway and the adjacent roadway. It contains mature evergreens planted by Appellees. Area 3 is behind the house starting from the tree line on Appellant's property to the back part of the landscaped bed containing the bird feeders and bird bath. The court concluded that there was no genuine dispute over Appellees' open, notorious, exclusive, continuous and adverse use of Areas 1 and 2, and no evidence that Appellant ever gave permission for any use to Appellees as to those areas. The court did find genuine issues of material fact existed due to the visibility of Area 3, and over the length of time Appellees used the area. Therefore, the court initially granted partial summary judgment over Area 1 and 2, and set a bench trial regarding specific, narrow issues as to Area 3. The record fully supports the conclusion of the trial court regarding Areas 1 and 2, and reveals there is no basis on which to overturn the trial court's grant of partial summary judgment.

{¶23} Regarding the trial court's verdict after trial concerning Area 3, the record also fully supports the court's decision. Appellees both testified at trial, along with their granddaughter Nicole Rawlings, their nephew Charles Alan Russell II, and the surveyor Mr. Vincent Dowdle. Mr. Dowdle testified that he created a survey of the disputed property in 2023, and another in 2025 in response to a court order to specifically designate Areas 1, 2 and 3 for purposes of this lawsuit. Appellees' testimony showed that they treated the disputed property as their own. They excavated the property, graded it,

trimmed and cut down trees and vegetation, cleared vegetation and mowed the property, changed the nature of the terrain, repaired the hillside when it slipped, maintained a pet cemetery with stone markers, created flower beds and planted flowers, installed bird feeders and bird baths, and used the property as their own yard for family leisure activities. All of these things were done at their own expense, continuously and openly viewable by Appellant and his predecessor in interest (his mother) since 1998. Appellees testified, without objection or rebuttal, that Appellant visited their home many times and personally observed the manner in which they were using the property.

{¶24} Rawlings testified that there were no visible obstructions around the disputed property, and the entire property in dispute at trial was visible from the road. She also testified that she had been visiting Appellees' house since 2001, lived there since 2008, and that no one other than Appellees maintained the disputed property since at least that time. Rawlings also testified that the pet cemetery had been there as long as she could remember and she had two pets buried there. She was personally aware that Appellant visited Appellees' house on many occasions.

{¶25} Appellant and his wife testified in their defense, along with five other witnesses. Melissa Jo Flinn testified that Appellees' use of the property was adverse, in that while she and Appellant were aware of Appellees' use they disapproved of it. Appellant testified that he was perfectly able to maintain the property over the past 21 years, but did not. He testified that he saw Appellees treating the property as their own by cutting down and removing trees. He testified that he did not want to argue with Appellees about their use of the property for fear that he might commit a felony. At one point, Appellee Gerald Adams gave Appellant permission to cut down a tree on what

Appellant considered to be his own property. Appellant also admitted in his testimony that he knew nothing of the use of the disputed property prior to 2016. He could not dispute any of Appellees' evidence regarding when the propane tank was installed, the grading of the property, their maintenance of the property, cutting grass on the property, repairing the hillside, or repairing damage when a tree from the property fell on Appellees' house. He testified that he could neither confirm nor deny whether there were obstructions blocking his view of the disputed area, although he eventually admitted that there was clear line of sight to at least some of the disputed property.

{¶26} Appellant's remaining witnesses provided evidence that was much more favorable to Appellees' claims rather than supporting Appellant's position.

{¶27} The evidence in this case includes all of the types of evidence raised in the *Bailey* case to support adverse possession, and a great deal more. There is no question that Appellees' use was adverse and not permissive, based on statements from Appellant and his wife, as well as from the testimony of Appellees and their granddaughter. The record also reveals Appellant's own attorney filed a document on May 8, 2025 admitting that adverse possession had been proven in the trial court.

{¶28} Appellant's suggestion that the court's decision to view the property was somehow in error is not persuasive. Appellant agreed to the judge viewing the property and to establishing the boundaries of Areas 1, 2 and 3. Although a metes and bounds description of Area 3 was not set forth in the court's initial decision to grant partial summary judgment, the court refiled the partial summary judgment entry on June 12, 2025 with the descriptions attached, showing that Area 3 consisted of .0508 acres, and that the remaining .1434 acres were awarded to Appellees. Partial summary judgment is

an interlocutory order that may be modified at any time unless specifically designated as a final order by the court, which did not occur here.  *Beck v. Jones*, 2008-Ohio-5343, ¶ 11 (8th Dist.); *Salata v. Vallas*, 2004-Ohio-6037, ¶ 23 (7th Dist.).

**{¶29}** Appellant's actual assignments of error have not been argued or supported on appeal and therefore have no merit.  Even giving Appellant the benefit of the doubt and extrapolating what his intentions were on appeal, it is apparent the trial court did not err in this matter.  Appellees have established that partial summary judgment was appropriate based on the record in this case  and that the court's verdict on the narrow issue presented at trial was fully supported by the evidence.  Therefore, Appellant's assignments of error have no merit and are overruled.

Conclusion

**{¶30}** This appeal involves a claim of adverse possession.  In his pro se appeal Appellant objects to both the trial court's decision granting partial summary judgment to Appellees and to the court's verdict on the remaining issue in a bench trial.  Appellant has not raised any cogent argument in support of his assignments of error.  Following our own review it is apparent the record fully supports the court's judgment in finding that Appellees proved adverse possession of the disputed land.  The judgment of the trial court is affirmed.

Robb, J. concurs.

Dickey, J. concurs.

Case No. 25 JE 0014

---

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**